MARIA H. WHITNEY, Appellant, *v.* JOHN MARTINE et al., as Executors, etc., Respondents.

Where an attorney, employed as agent to loan moneys on bond and mortgage, made loans for comparatively small sums secured by bonds, the obligors in which were insolvent, and by mortgages on real estate, upon which were already mortgages to a large amount, without knowledge on the part of his principal of the existence of such prior incumbrances, and the real estate was sold on foreclosure for much less than the amount of the prior mortgages, *held,* that these facts justified a finding of negligence on the part of the agent; and that he was liable to his principal for the loss.

Also *held,* that the fact that the principal received payment on the mortgages without knowledge of the circumstances did not preclude him from asserting his claim. Nor was the receipt by him of a sum of money from the attorney after the loan was made, which the latter stated to be a gift, a ratification of the transaction or a waiver of his right of action.

The right of an agent in any case without the assent of his principal to loan on a second mortgage, questioned.

The complaint in the action against the attorney contained an offer to assign to him the bonds and mortgages; the point that no tender had been made, did not appear to have been raised upon the trial. No provision was made in the judgment for a transfer. *Held,* that the objection was not tenable here; also, that if an assignment of the securities was proper, plaintiff had done all that could be required.

*It seems* that the judgment in such case may be amended on application to the court below, by inserting a provision that plaintiff shall assign upon request.

*Whitney* v. *Martine* (15 J. & S. 396), reversed.

(Argued March 20, 1882; decided April 11, 1882.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made February 7, 1881, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 15 J. & S. 396.)

The nature of the action and the material facts are stated in the opinion.

*Samuel Hand* for appellant. Plaintiff's offer, in the complaint, to assign the bonds and mortgages was all that was necessary, especially in the absence of any request to find, motion for nonsuit or other objection on the trial. (*White* v. *Dodds*, 42 Barb. 555; *King* v. *Fitch*, 40 N. Y. 451; *Lewis* v. *J. A.*, 4 Edw. Ch. 611; Code of Civil Procedure, § 722.) As Theodore Martine acted as agent and trustee he was liable as such. (*Dambman* v. *Schulting*, 75 N. Y. 62; *Cowee* v. *Cornell*, id. 99–100; *Lytle* v. *Beveridge*, 58 id. 593–606; *Bain* v. *Brown*, 56 id. 285, 288–9; *Conkey* v. *Bond*, 36 id. 429, 430; 1 Story's Equity Jurisprudence, §§ 187, 190; *Fish* v. *Miller*, 1 Hoff. Ch. 280–1; 1 MacQueen's Appeal Cases, 236.)

*Charles A. Jackson* for respondents. It was plaintiff's duty to offer to return the bonds and mortgages as soon as there was a failure to pay the interest upon them. (1 Story's Equity Jurisprudence [9th ed.], § 310.) When the principal, upon a full knowledge of all the circumstances of the case, deliberately ratifies the acts, doings or omissions of his agent, he will be bound thereby as fully, to all intents and purposes, as if he had originally given him direct authority in the premises to the extent which such acts, doings or omissions reach. (Story on Agency, §§ 239, 240, 242, 243, 253, 255; *Breck* v. *Jones*, 16 Tex. 461; *Ahern* v. *Goodspeed*, 72 N. Y. 116; *Rathbun* v. *Citizens' Stmbt. Co.*, 76 id. 379; *Whitney* v. *Union Trust Co.*, 65 id. 576; *Fishkill Savings Institution* v. *Bostwick*, 19 Hun, 355; *Hanks* v. *Drake*, 49 Barb. 186; *Farmers' L. & T. Co.* v. *Walworth*, 1 N. Y. 483; *Smith* v. *Tracy*, 36 id. 83; *Bridenbecker* v. *Lowell*, 32 Barb. 9; *Hope* v. *Lawrence*, 50 id. 258; *Cairnes* v. *Bleecker*, 12 Johns. 300; *Bell* v. *Sibley*, 33 Barb. 610; *Feyerson* v. *Hamilton*, 35 id. 427.)

MILLER, J. This action was brought to recover a sum of money which it is claimed the defendant's testator invested upon bond and mortgage as agent and attorney of the plaintiff upon real estate in the city of New York which was incumbered by prior mortgages, and which was sold for a less amount than said mortgages, by means of which the investment was a loss to the plaintiff. The order of reversal does not provide that the judgment was reversed on questions of fact, and hence the only questions we are called upon to consider upon this appeal are questions of law.

The first question which properly arises is, whether the evidence upon the trial was sufficient to support the findings and the judgment of the court. There is proof to show that the testator acted in the capacity of agent and attorney in making the loan. The answer admits that he negotiated and procured to be accepted the loan which was made upon the terms and conditions therein stated and referred to. It appears that the testator came with the plaintiff to the place where, and at the time when, the money was paid to her upon another mortgage, made out the statement as to the amount, brought a satisfaction-piece of the mortgage with him for which he was paid, received the money which was paid for the plaintiff, and acted or seemed to act on her behalf as her attorney in the transaction of the business in preference to the plaintiff's former attorney with whom it had previously been transacted. It was also proved that the plaintiff subsequently, by the request of the testator, was at his and his son's office to close up the business, delivered the check for the money to him, was introduced to the son, but said nothing to him whatever about the title of the lots or the business. A week afterward the testator delivered the bonds and mortgages to her, and paid her three hundred dollars as a present, as the plaintiff testifies and claims. The testator afterward collected a small amount on the bonds and mortgages, and wrote several letters to the bondsmen demanding payment of interest and taxes. Although there was a contradiction in this testimony in regard to the

testator's relation to the plaintiff, it was sufficient, nevertheless, to warrant the conclusion that the testator was intrusted by the plaintiff with making the loan, and the duty devolved upon him to see that the money was safely and securely invested. The responsibility of an agent or attorney under such circumstances is beyond dispute, and the rule is well settled that the agent is not only bound to act in good faith, but to exercise reasonable diligence and such care and skill as is ordinarily possessed by persons of common capacity engaged in the same business. (Story on Agency, 183; *Heinemann* v. *Heard*, 50 N. Y. 35; Story's Eq. Juris., § 310.) When the relations of contracting parties are such that they do not deal on terms of equality, a very strict rule prevails, and an agent or trustee who occupies such a position has no right to avail himself of his superior knowledge of the matter derived from the fiduciary relation, or influence or weakness, dependence or trust, to take an unfair advantage. (*Cowee* v. *Cornell*, 75 N. Y. 99, 100.) The testator being the agent or trustee of the plaintiff in making the loan, the next question which properly arises is, whether by reason of his failure to perform his duty, or his carelessness and neglect in making the investment, the same was lost to the plaintiff. The court found upon the trial that the investment was not first class, nor a good and proper one, and proved to be utterly worthless, and decided as a conclusion of law that it was a violation of duty of the testator to invest said money upon property, subject to two prior mortgages of ten thousand dollars each then existing upon the same, and held the defendants liable for the amount invested. There is, we think, sufficient evidence to sustain this finding. There was testimony showing that the plaintiff had no acquaintance with the mortgaged premises, although it is testified she had examined the premises and knew that there were second mortgages. She denies that, and swears that she did not know that there were second mortgages until a week after the mortgages executed to her were returned to her, and the weight of the evidence is found by the court to be in her favor. One witness testifies to a statement made in the presence of the testator that he did wrong in making these

mortgages second mortgages, which was not denied by him. Although this testimony is not very strong and may perhaps be subject to criticism, yet in connection with the other evidence presented on the trial, as well as the fact that being unaccustomed to business, the plaintiff in all probability had but little knowledge as to the nature of such security, it is a reasonable conclusion that she was not aware of that fact, nor of the exact nature of the security taken.

The proof shows that the value of the property even at the highest estimate placed upon it by the defendants' witness was but a few thousand dollars over the amount of the first mortgages and the plaintiff's loan, and a very inadequate security in case of a change or fluctuation in value or the depreciation of real estate in the locality, from any cause. It also appears that the loan upon the first mortgages was made at an unusually large discount for a good investment, and that a large amount was retained for fees, for examining title and other expenses; that the mortgagors were, or became afterward, insolvent and the property was sold at far less than the amount of the first mortgages. These circumstances all tend to show that the loan was improvidently and improperly made, and unsafe and insecure at the start. Perhaps it might not be sufficient to charge the defendant for neglect of duty on the last evidence referred to, and there would be ground for hesitation, independent of the fact that the mortgages of the plaintiff were second mortgages, taken after others of a large amount had been given, and thus would render it necessary for the plaintiff, on an emergency, to raise a large amount to protect a comparatively small sum loaned by her upon the property. Loans, under such circumstances, are always hazardous and doubtful, and, while the attorney or agent may be exonerated, where the party had full knowledge of their existence and the value of the property, it would be a very unsafe rule, to hold as a matter of law, that an agent would be justified without an understanding by the party of the true character of the prior incumbrances, under circumstances like these here presented.

The right of an agent to advance funds on second mortgages

or security not of the first class may well be questioned. (McQueen's Appeal Cases, 236.) And, as a general rule, it may properly be laid down that it is not prudent or safe to advance moneys on second mortgages when there are large prior incumbrances, and especially where the personal security of the mortgagor is in any way precarious. Such an investment is not a first-class one. The risk of protecting a small investment by advancing more than three times as much, and quite a large sum for most persons, is far too great to be taken by an agent without his principal being fully aware of the security he is to receive for his money. And as this case is presented upon the evidence, we are brought to the conclusion that the agent exceeded his authority and was chargeable with a want of proper care and skill in making the investment; and for this neglect he is legally liable for the loss sustained. In regard to a ratification by the plaintiff, we think that the acceptance of some of the money which was due to her was not sufficient to preclude her from asserting her claim. It was without knowledge of the circumstances, and of her right to disaffirm the act, and it cannot, therefore, be held that she is barred from maintaining an action. (*Fish* v. *Miller*, 1 Hoff. Ch. 290, 291.) Nor was the $300 received by the plaintiff, for a purpose not entirely apparent, a ratification or waiver of her right of action.

We are also of the opinion that no tender of the bonds and mortgages was required, or proof thereof prior to judgment. The point does not appear to have been made upon the trial, nor is it presented in any of the requests to find of the defendants' counsel. If a tender was required it could have been made upon the trial, upon the question as to its necessity being raised. The plaintiff in her complaint offered to assign the bonds and mortgages to the testator. If this is a case where an assignment is proper, all has been done which was required from the plaintiff to accomplish that purpose. The several requests to find which were refused have been examined and we are unable to discover any error of the judge upon the trial in respect to any of them.

The point that provision should have been made in the judgment for the delivery of the bonds and mortgages to the defendants is without force.   It relates to the form of the judgment, was not made on the trial or the settlement of the decree, and cannot be raised upon appeal.   Besides a distinct offer to do this was made in the complaint, and the judgment may be amended in this respect by an application to the Special Term of the Supreme Court, to insert therein a provision that the plaintiff, upon being requested, shall assign the bonds and mortgages to the defendants.

For the reason stated the General Term was in error in reversing the judgment, and the order appealed from should be reversed and the judgment of the Special Term affirmed without prejudice to the application to the Special Term to amend the same, with costs.

All concur, except ANDREWS, Ch. J., not present at argument.

Order reversed and judgment accordingly.