ELEANOR B. KING, Respondent, *v.* WILLIAM MACKELLAR, Appellant.

In 1871, plaintiff, a woman of limited means, and a cousin of defendant, intrusted to him $3,000 under an agreement that he should invest the same for her upon bond and mortgage. Defendant had previously purchased certain property in the city of New York and taken the title in his wife's name. He was at the time negotiating an exchange thereof with one S. for other lands. Defendant's wife conveyed the lots to the wife of S., who in turn conveyed to defendant's wife such other lands and executed to her a bond, secured by a mortgage of $3,000 upon the New York lots, subject to a prior mortgage of $6,000. After the exchange had been consummated defendant caused his wife to execute an assignment to plaintiff of the $3,000 mortgage, and he retained the $3,000 so intrusted to him. The mortgage was recorded but the assignment was not. None of the papers were exhibited or delivered to plaintiff, and she had no information of the transactions until 1878. In an action to foreclose the prior mortgage defendant's wife was made a party defendant, as the recorded holder of the second mortgage, and she appeared by their son, a lawyer. Upon the sale in the foreclosure suit, which occurred in 1877, there was a deficiency, and the lien of the second mortgage was extinguished except as to about twenty feet of the rear of the lot. Early in 1878, when plaintiff had learned the above facts, defendant promised to protect her from loss, and he obtained from the wife of S. a deed conveying the twenty feet, not covered by the first mortgage, to a relative of plaintiff, as for her security. This deed, with the bond and mortgage and assignment, were handed over to the plaintiff late in the year 1878, but she shortly after returned them to defendant with a demand for a repayment of her money. Defendant had, down to 1878, collected and paid plaintiff the interest on the mortgage. In an action, brought to recover the $3,000, the trial judge found that plaintiff was ignorant of the forms and methods of making such investments and relied wholly upon defendant, and that the obligor in the bond secured by the second mortgage had no separate or other estate, except that conveyed to her in the exchange of properties between defendant and her husband. Upon the trial plaintiff made a tender, without objection being made, of a deed of the twenty feet. *Held,* that plaintiff was entitled to recover; that there was, in fact, no investment of the money as agreed, but that if the assignment of the mortgage could be considered as an investment it was an improper and insecure one, and so was without the scope of defendant's agency, and could be treated by plaintiff as null; also, that there was no ratification by plaintiff of defendant's acts, and no waiver of her right of action.

Also, *held,* that plaintiff's right of action arose when she, with knowledge of the facts, elected to revoke defendant's authority and to disaffirm his acts, and upon her demand for a return of the money, from which time the statute of limitations only began to run.

No demand was alleged in the complaint, but demand was proved without objection, and there was no demurrer to the complaint. *Held,* that the omission of the averment was not available as an objection here; also that it would have been competent for the court to admit evidence of demand on the trial if objection had been raised, allowing an amendment of the complaint.

Also, *held,* the fact that the complaint states matters belonging to the province of the trial, *i. e.,* details of proof showing the sham or mock nature of the alleged investment and the methods adopted by the defendant to disguise his retention of the money, did not constitute a material defect.

The provision of the Code of Civil Procedure (§ 410), declaring that when a right of action exists, growing out of the receipt or detention of money by a " person acting in a fiduciary capacity," the time within which an action must be commenced " must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends," created no new rule of law, but was simply a codification of the law as it then existed.

(Argued March 16, 1888;  decided April 10, 1888.)

APPEAL from judgment of the General Term of the Supreme Court of the first judicial department, entered upon an order made November 6, 1885, which affirmed a judgment in favor of plaintiff entered upon the decision of the court at Circuit upon a trial without a jury.

The nature of the action and the material facts are sufficiently stated in the opinion.

*Herbert T. Ketcham* for appellant. There was a sufficient ratification of the investment by plaintiff. (94 N. Y. 321, 322.) This action is governed by the statute of limitations in force before the Code of Civil Procedure went into effect. (Code of Civ. Pro. §§ 91, 3356, 414, subd. 3, 4.) In the case of torts arising *quasi ex contractu* the cause of action arises immediately upon the happening of the default, and is not postponed to the damage thereby occasioned, or to the discovery by the injured party of his misfortune. (Angell on

Lim. §§ 139, 136 and foot note ; Wood on Lim. §§ 122, 177 ; *Smith* v. *Fox*, 6 Hare, 386 ; *Brown* v. *Howard*, 4 Moore, 508 ; 2 B. & B. 73 *Whithead* v. *Howard*, 3 B. & Ald. 288 ; *Crawford* v. *Gaulden*, 36 Ga. 173 ; *Gauley* v. *Troy City Nat. Bank*, 98 N. Y. 487, 493, 494.) No demand was necessary to set the statute running. (Code of Pro. § 74 ; 98 N. Y. 487 ; *Wilcox* v. *Plummer*, 4 Pet. 495 ; 4 Moore, 508 ; 2 B. & B. 73 ; 3 B. & Ald. 288 ; 33 Ga. 173 ; *Carr* v. *Thompson*, 87 N. Y. 160, 165, 166.) Section 410 of the Code of Civil Procedure does not apply to this case. (*Bronson* v. *Munson*, 29 Hun, 54.) As plaintiff retained, until the close of the second trial, substantial fruits of the investment, she cannot recover. (*Moyer* v, *Shoemaker*, 5 Barb. 319 ; *Wheaton* v. *Baker*, 14 id. 594 ; *White* v. *Seaver*, 25 id. 235 ; *Gould* v. *Cayuga Co. Nat. Bank*, 86 N. Y. 75.) Plaintiff can only recover upon her rights as ascertained at the commencement of the action. (*Tiffany* v. *Bowerman*, 2 Hun, 643 ; *McCullough* v. *Colby*, 4 Bosw. 603.) The proffer of the deed on the trial was of no avail. (86 N. Y. 75 ; *Whitney* v. *Martine*, 15 J. & S. 396 ; 88 N. Y. 540.) The acts of a trustee are only voidable, and the beneficiary must declare his avoidance by appropriate acts of rescission. (*Smith* v. *Lansing*, 22 N. Y. 520 ; *Duncomb* v. *N. Y. H. & N. R. R. Co.*, 84 id. 190.)

*Frederic R. Coudert* for respondent. The statute of limitations does not apply to this case, but it is directly within the provisions of section 410 of the Code of Civil Procedure. (*Bronson* v. *Munson*, 4 Hun, 60 ; *Case* v. *Carroll*, 35 N. Y. 385, 390 ; *Lytle* v. *Beveridge*, 58 id. 606 ; *Brent* v. *Maryland*, 18 Wall. 433.) Defendant having concealed the breach of trust, the statute would not run in his favor until the discovery of the facts. (*Beattie* v. *Pool*, 13 S. C. 383 ; *Prevost* v. *Gratz*, 6 Wheat. 497 ; *Hamburger* v. *Kennedy*, 4 Desau. [S. C.] 479 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 122.) As there was no agreement by defendant to make the investment or account for the money received within a specified

time, plaintiff could not maintain this action until she had demanded a return of the money. (*Carr* v. *Thompson*, 87 N. Y. 160, 165; *Bronson* v. *Munson*, 29 Hun, 54; *Joseph* v. *Baker*, 16 Cal. 173; *Sadowsky* v. *McFarland*, 3 Dana [Ky.] 27; Wood on Limitations, 429, 430; *Hopkins* v. *Hopkins*, 4 Strobh. [S. C.] Eq. 357; *Dacy* v. *Feld*, 1 Abb. Ct. of App. Dec. 490; Pottier on Contracts [Evans' ed·], cited in *Payne* v. *Gardiner*, 29 N. Y. 146; *Gauley* v. *Troy City Nat. Bank*, 98 id. 493.) The pretended investment by the defendant of plaintiff's money was no investment at all. (*Fulton* v. *Whitney*, 66 N. Y. 555, citing and approving *Case* v. *Carroll*, 35 id. 388, 389; *Davoue* v. *Fanning*, 2 Johns. Ch. 252; *Gardner* v. *Ogden*, 22 N. Y. 651 [4 Hun, 689]; *Graves* v. *Waterman*, 36 id. 439; *Duncomb* v. *N. Y., etc. R. R. Co.*, 84 id. 198; *Butts* v. *Wood*, 37 id. 319; *Gallatin* v. *Cunningham*, 8 Cow. 361.) It is negligence, as a matter of law, for a trustee or agent to invest trust funds in a second mortgage on property already heavily incumbered. (*Whitney* v. *Martine*, 88 N. Y. 539, 540.) The denial of the motion to dismiss on the ground that no demand was alleged and the exception based thereon are of no consequence, because the error, if it was one, was cured by proof of the demand, subsequently introduced without objection, and upon the admission of defendant that such demand had been made. (*Bartholomew* v. *Lyon*, 67 Barb. 88, 89; *Schen. & Sar. Plank Rd. Co.* v. *Thatcher*, 11 N. Y. 112; *Leslie* v. *Knick. Life Insurance Co.*, 63 id. 31, 32; *Colgrove* v. *Harlem R. R. Co.*, 20 id. 492; 6 Duer, 382; Code of Civ. Pro. § 723; *Clark* v. *Crego*, 51 N. Y. 646; *Harris* v. *Tunbridge*, 83 id. 97; *Bate* v. *Graham*, 11 id. 242; *Haddon* v. *Lunday*, 59 id. 320; *Pratt* v. *H. R. R. Co.*, 21 id. 305; *Lounsbury* v. *Purdy*, 18 id. 515.)

GRAY, J. When this case was before this court on a former occasion the judgment in the plaintiff's favor was reversed, and a new trial granted, on the ground that the action being for a conversion by defendant of moneys intrusted to him by plaintiff, the exclusion of evidence tending to show honesty

and good faith in defendant's disposition of the moneys was erroneous. (94 N. Y. 317.) The plaintiff amended her complaint and, as amended, the action proceeded upon an undertaking of the defendant to safely and securely invest her moneys, for her benefit, upon good bond and mortgage. The trial judge found, as a conclusion of law, "that the defendant, in receiving the plaintiff's money upon an undertaking and promise to invest the same for her upon bond and mortgage, assumed a fiduciary relation and duty towards her; and that he violated such duty in retaining the plaintiff's money in his own possession, and causing the execution to his wife and the assignment by her of the $3,000 mortgage, as stated in the fifth and eighth findings of fact."

The argument of appellant's counsel on the appeal here was confined to certain points which we shall mention. He insists that plaintiff, with knowledge of the facts, ratified the defendant's acts; that her dealings were not with the defendant; that the alleged investment of her moneys was a safe and prudent one; that she received and retained substantial fruits of the alleged investment, and that the statute of limitations in force before January 1, 1877, bars any cause of action she may have. We think none of these grounds to be tenable for a serious attack upon the plaintiff's judgment, and that the trial judge's conclusion as to defendant's liability was right. A brief statement of the occurrences makes this clear.

The plaintiff, a woman of limited means and a cousin of the defendant, in a prior transaction in the year 1868, had loaned through him $2,000 upon bond and mortgage. She had received and she held the papers evidencing this transaction until June, 1871, when the loan was paid, and she executed a satisfaction piece. At that time, and upon the suggestion of another opportunity offering itself for a secure investment upon bond and mortgage of the sum of $3,000, she intrusted that amount to defendant's custody for that purpose. When defendant received from plaintiff these moneys he was engaged in a transaction with one Thomas Sampson for an exchange of real properties. Certain premises

in New York city which had been purchased by defendant, but the title to which had been taken in his wife's name, were conveyed to Mary, wife of said Sampson, and she simultaneously conveyed to defendant's wife a farm on Staten Island, and executed to her a bond, secured by a second mortgage on the Second avenue property conveyed to her, to represent $3,000 of the valuation or purchase-moneys of that property agreed upon for the purposes of the trade. There were other details of adjustment of valuations as to the live stock on the farm and the furniture on the city premises, but they are not material to the consideration here. This mortgage for $3,000 was subject to a prior mortgage to secure the sum of $6,000. After this exchange of properties had been consummated in its particulars, defendant caused his wife to execute an assignment of the mortgage for $3,000 to the plaintiff. The mortgage was recorded, but the assignment never was. Neither this assignment, nor the bond and mortgage, were ever exhibited or delivered to plaintiff, or information of the transactions mentioned given to or possessed by the plaintiff, until some seven years afterwards. Defendant retained the assignment in his possession, and when an action was brought to foreclose the prior mortgage and his wife was made a party defendant, as the recorded holder of the second mortgage, he still refrained from giving any information to plaintiff of the disposition of her moneys, and his wife appeared in the action by their son, a lawyer.

The sale under the decree in foreclosure occurred in 1877, resulted in a deficiency and the lien of the second mortgage was extinguished, except as to about twenty feet of the rear of the lot. Early in the year 1878, when it had come to plaintiff's knowledge that defendant had pretended to have invested her moneys in a second mortgage upon the lot in Second avenue, he promised to protect her from loss. He obtained from Mrs. Sampson a deed conveying the twenty feet not covered by the first mortgage, to a relative of plaintiffs as for her (plaintiff's) security. This deed, with the bond and mortgage and the assignment thereof, were first handed over

to plaintiff late in the year 1878, but shortly after their receipt were returned to defendant with a demand for repayment of her moneys. From the time when he received the plaintiff's moneys, down to 1878, defendant would pay over to her the interest moneys which were paid by the mortgagee, Sampson.

The trial judge found as facts, and there is evidence warranting his doing so, that the plaintiff was a woman ignorant of the forms and methods of making such investments, who relied wholly upon her cousin's, the defendant's, knowledge and experience to make a secure investment of her money; that he knew she was poor and had little, if anything, beyond the moneys he had received from her, and that Mary Sampson, the obligor in the bond secured by the second mortgage, had no separate or other estate, except that conveyed to her in the trade. Thus, even if upon the facts we could assume the making of any investment at all by the defendant for plaintiff, he made it upon the bond of an irresponsible obligor, secured by a mortgage upon property already heavily incumbered, and with knowledge that the plaintiff would not be able to protect such an investment of her moneys in the event of the foreclosure of the prior mortgage. This would be an improper and insecure disposition of moneys by anyone acting for another, either as an agent, trustee or in a fiduciary capacity. In *Whitney* v. *Martine* (88 N. Y. 535, 540), Judge MILLER, delivering the opinion of this court, in speaking of an investment of plaintiff's moneys by her agent and attorney, said " as a general rule it may properly be laid down that it is not prudent or safe to advance moneys on second mortgage where there are large prior incumbrances, and especially where the personal security of the mortgagor is in any way precarious."

This rule commends itself to our especial approval in cases like the present, where the party whose moneys are so invested will probably be unable to protect the investment by advancing enough to pay off the prior incumbrance.

And where, as here, the agent makes such an investment without authority and without informing his principal of the

character of the security, we think the act was without the scope of the agency and could be treated as null. But we think the assumption that there was any investment of plaintiff's moneys finds no support in the case. Defendant simply retained the plaintiff's moneys in his own possession, going through the form of procuring his wife to make an assignment of a bond and mortgage, which represented no original loan or investment of moneys, but which had been received as a part of the consideration expressed upon a trade of properties. The investment was, in fact, but a mere sham and a form, incompletely gone through with at that, as, doubtless for some ulterior purpose, the defendant did not even record the assignment. And when the action was brought to foreclose the prior mortgage, to procure the appearance by his wife in the action, as the holder of the second mortgage, was in itself a continuance of a course of deceit and suppression. The scheme, as developed by the case, seems to reveal a plan by which the trade of properties, upon which defendant had entered, was to be made more advantageous to himself in the realization of cash through the use of plaintiff's moneys. If the Sampson mortgage was ever paid, the money could be used to pay plaintiff; but if it turned out to be valueless, defendant would not be the loser, as he would shift the loss upon the plaintiff under the guise of an investment for her, which had resulted unfortunately. Through his influence over her and her confidence in him, he might trust to prevent any embarrassing inquiry or examination by her as to the details of his disposition of her moneys. If the plan resulted successfully, and the Sampson mortgage was paid, nothing would ever be known; whereas, if it did not, he would trust to his ability to find means to fasten the loss upon the plaintiff. He would get rid of his precarious security that had been taken in the trade, and keep the $3,000 in money. Finding himself confronted with plaintiff's claim he now sets up the pretended investment of her moneys and pleads a statutory bar to any claim.

It is clear from the evidence, and it appears from defend-

ant's own testimony, that the plaintiff's moneys were to be put out upon bond and mortgage, while, in fact, they went to his bank account and there remained; he, as he puts it, giving credit for them to his wife.

Comment seems superfluous. The defendant's acts were characterized by bad faith and by deceit, and were in flagrant violation of his duty towards plaintiff.

Nor does the case furnish any support for defendant's theory of a ratification by plaintiff of his acts. Ratification implies a knowledge of the circumstances and of the right to reject or ratify. (*Nixon* v. *Palmer*, 8 N. Y. 398; *Baldwin* v. *Burrows*, 47 id. 199; *Adair* v. *Brimmer*, 74 id. 554; *Whitney* v. *Martine*, 88 id. 535–540).

Here there was no knowledge, until after the exposure of defendant's conduct. Acceptance by the plaintiff of the deed of the twenty feet, not covered by the first mortgage, was not a fact which defendant can rely upon; for she took it in ignorance of the circumstances and of her rights and in the desperation caused by the supposed loss of her moneys. When advised of her rights, and within a very short time, plaintiff, showing no indecision, acted promptly in asserting them. On October 5, 1878, she returned the deed, which defendant had advised her taking, and the bond and mortgage, with the pretended assignment thereof, which were sent to her by defendant's son, and claimed from defendant the return of her moneys. Upon the trial she made tender, without the interposition of an objection, of a deed of conveyance of the twenty feet. Nothing appears in the facts amounting to either ratification by plaintiff, or to a waiver of her right of action; and we think the facts did establish the right to recover back the moneys, unless the statute of limitations has interposed a bar to any recovery.

Demand was necessary for the assertion of plaintiff's right to have her moneys returned to her, and to impose upon defendant, in the event of his non-compliance, a liability to respond in an action. She had relied upon the defendant and was led to suppose that he had faithfully used the authority

given him to invest her moneys, and had carried out his under-
taking to safely place them upon bond and mortgage. That
belief was fostered by the receipt, during the seven years, of
supposed interest moneys. Defendant had studiously con-
cealed the fact of his having used her moneys for his own
benefit and purposes. When she discovered that, in truth,
they never had been invested, but, in fact, had been retained
in his possession, she had the right to revoke his authority
and to demand the moneys she had intrusted to him.

The fact that this action would be controlled by the statute
of limitations in force before the present Code went into
effect, by which a limitation of six years for the commence-
ment of actions "upon a contract obligation or liability,
express or implied" was prescribed, does not affect the
plaintiff's right of recovery.

No liability to return the plaintiff's money existed by mere
force of the original undertaking, but first sprang into exist-
ence when the plaintiff, with knowledge of the facts, elected
to revoke her authority to the defendant and to disaffirm his
acts, and upon her demand for the return of her money. The
present Code of Civil Procedure, by section 410, provides :
"Where a right of action exists, but a demand is necessary
to entitle a person to maintain an action, the time within
which the action must be commenced must be computed from
the time when the right to make the demand is complete,
except  *  *  *  where the right grows out of the receipt
or detention of money  *  *  *  by a person acting in
a fiduciary capacity, the time must be computed from the
time when the person having the right to make the demand
has actual knowledge of the facts upon which that right
depends."

This section was a codification of the law as it existed at
the time of its adoption and created no new rule of law.
The right of action became enforceable against the defendant
when the plaintiff discovered that he had never in truth dis-
posed of her moneys, but had retained them himself, under
the pretense of having invested them. We think that there

was no investment at all of plaintiff's moneys; and if what was done by defendant can be assumed to have been in the nature of an investment, it was unauthorized, and was, in any case, not such as the courts will countenance or allow in one acting in a fiduciary capacity for another. When plaintiff discovered the facts, then she had the right to repudiate and disregard the defendant's acts, and to revoke the defendant's authority to dispose of her moneys and to reclaim the possession of those moneys, of which, on one theory of the case, no investment had been made, and, on the other theory, but a colorable and unauthorized investment was set up.

If there was no investment, she had the right to revoke the original authority and to reclaim her moneys. If there was a disposition of them, by some form of investment not authorized by the terms of the agency, and not sanctioned by the law, then the matter stood as if no investment had been made, and she had the right to revoke his authority and to reclaim her moneys. It was the discovery of the true state of affairs that gave her the right to revoke her authority to the defendant and to demand back her moneys, and, upon a refusal to comply, to commence an action against him. Demand was not alleged in the complaint, but it was proved on the trial without objection. The complaint stated facts sufficient to make out, on the defendant's part, a violation of duty and a breach of faith towards plaintiff in the use of her moneys for his own benefit. Though the complaint might be defective, tested as a pleading, for the failure to allege demand, yet as the demand was proved, without objection, on the trial, and the complaint was not demurred to, it was competent for the court to admit evidence of it on the trial. (*White* v. *Spencer,* 14 N. Y. 247; *Simser* v. *Cowan,* 56 Barb. 395; *Fullerton* v. *Dalton,* 58 id. 236, 240.) If objection had been made to the offer of proof of demand, the court could have allowed an amendment of the pleading conforming it to the proof.

That this complaint states matters belonging to the province of the trial as details of proof showing the sham or mock

nature of the alleged investment, and the method adopted by defendant to disguise his retention of the money does not constitute a material defect.

The judgment appealed from should be affirmed, with costs. All concur.

Judgment affirmed.