In the Matter of the Estate of MAXWELL HALL ELLIOTT, Deceased.

Surrogate's Court, New York County, August 6, 1937.

*Frederick W. Ritter*, as executor.

*Thomas R. Hart, Jr.*, for The Teachers Building & Loan Association of New York City, creditor-objectant.

*McDermott & Turner*, for Jane McDonough and Mary E. McDonough, individually and as executrix, etc., creditors-objectants

*Walter G. McGahan*, for Annie Bremen, creditor-objectant.

*Clarke & Frost*, for Lillie Hempel, creditor-objectant.

*Theodore Baumeister*, for New York Teachers' Relief Association, creditor.

*Alfred J. Bedard*, for Emma E. Gross, as executrix, etc., creditor-objectant.

*Laughlin, Gerard, Bowers & Halpin*, for Corn Exchange Bank Trust Company, creditor-objectant.

*Robert J. Robeson*, in person and for Arthur Ginnever, Edmond Diemer, Harry A. Skinner and John B. Kirkman, creditors-objectants.

*Horstmann & Kozinn*, for David B. Lawton, Jr., creditor-objectant.

*A. M. Dreyer*, for Title Guarantee and Trust Company, creditor.

*Francis Bertram Elgas*, for Louis Wendel, creditor.

*Cohen & Jarcho*, for Seventeen East Ninety Sixth St., Inc., creditor-objectant.

*James J. Dooling*, for Ambrosia G. McCarron, creditor.

*Garfield & Seligson*, for Augusta B. Jager and Elizabeth S. Boedecker, creditors.

*Knox & Dooling*, for Cecile K. L. Acton, Susan R. Lawton an Mina L. Acton, creditors.

*George Brussel, Jr.*, for Maxwell Hall Elliott, Jr., one of next of kin, objectant, and for various creditors, objectants.

*Kathryn A. Wendel*, for Charles L. Wendel, creditor-objectant.

*George Dines*, for J. Field Kennard, creditor-objectant.

DELEHANTY, S. Decedent was director, treasurer, secretary and attorney for Teachers Building and Loan Association. In May, 1933, he was also attorney for an individual owning a certain parcel of real property on the security of which the owner desired to borrow. With the authorization of the association decedent loaned $12,000 of the association's funds to this individual client, taking back a first mortgage in this amount on the property in question.

At the same time the property owner gave a $2,000 second mortgage to the decedent who took it in the name of a corporation whose stock he wholly owned. Later this mortgagor died and the decedent became executor of his estate. This was the general situation existing on April 19, 1934. On that date the decedent notified the bookkeeper of the association that check No. 7,825, dated April 20, 1934, to the order of Estate of Alfred Frank for $2,000, represented an amount " to be added to the mortgage " taken in May, 1933. It is uncontroverted that the $2,000 represented by check No. 7,825 was used by decedent for his own purposes. The proof further shows that at this time no new mortgage was granted by the estate which owned the mortgaged property nor was any assignment made of the second mortgage held by Southport Holding Corporation.

In December, 1934, the association learned that decedent had practiced frauds on it. At a meeting of the board of directors on December 17, 1934, an attorney representing the decedent attended. Three specific transactions involving alleged misconduct by decedent were considered at that meeting. Two of them were disposed of by presentation to the board by the decedent's representative of certified checks in the sum of $8,500. Relative to the third item which involved check No. 7,825, a tender was made to the association of an assignment in its favor from Southport Holding Corporation of the $2,000 second mortgage which it owned. This assignment was dated May 22, 1933. The board of directors of the association declined to accept the proffered assignment. It insisted on a return of its money, with interest from the date of withdrawal. This position the board formally reasserted on December 22, 1934. So matters rested when decedent died on December 31, 1934.

It has now developed that the estate of decedent is insolvent. Teachers Building and Loan Association now desires to obtain the $2,000 second mortgage. The motivation for this change of front is obvious. To effectuate its aim it brought on the present proceeding under section 206-a of the Surrogate's Court Act. Argument is now made that the second mortgage is the subject matter of a trust for the benefit of this claimant; that decedent without authorization made an unwarranted investment of the claimant's money, but that the claimant may and by this proceeding now does ratify the action of its faithless servant and so is now entitled to recover the mortgage; that the conduct of the association in December, 1934, did not amount to an election to insist upon the decedent's tort; and that if the association elected at that time to reject the mortgage it made such election without full knowledge

of the facts and thus may now rescind its election and insist on delivery of the mortgage.

To elect is to choose. For an election it is essential that there should be presented at least two alternatives so related to one another that upon grasping one the other passes out of reach. The uncontroverted facts developed in this proceeding show that the petitioner never had the right to elect because there never were any alternative remedies. The decedent misappropriated $2,000. He *said* that this sum went to increase the $12,000 mortgage by that amount. But the parties by their proof demonstrate that nothing of the kind took place. The present petitioner, defrauded by this misappropriation, might perhaps have resorted to estoppel to prevent the decedent in his lifetime or his estate after his death from showing the true nature of the transaction. But the petitioner has not done this. On the contrary, the petitioner and respondent have collaborated to translate the actual facts into a legal record. And these facts show not an unauthorized investment by decedent but a plain embezzlement of the petitioner's funds. Having waived the estoppel open to it, petitioner can recover only if it can now accept the offer made by the decedent in his lifetime to give an assignment of the second mortgage in discharge of his $2,000 debt. That offer was twice rejected, first, on the seventeenth and, thereafter, on the twenty-second of December. No principle is more obvious than that an offer terminated when its rejection is communicated to the offerer.

The present case is strikingly similar in some respects to *King* v. *Mackellar* (109 N. Y. 215). There defendant had authority from plaintiff to invest $3,000 of plaintiff's money " upon good bond and mortgage." There, as here, defendant actually retained the money in his own possession. There, as here, he had his *alter ego* execute an assignment of a second mortgage to the principal who had trusted him. There, as here, the assignment was never recorded. Sued in conversion the defendant set up the plaintiff's ratification of his " investment " as a defense. The court said: " We think the assumption that there was any investment of plaintiff's moneys finds no support in the case. Defendant simply retained plaintiff's moneys in his own possession, going through the form of procuring his wife to make an assignment of a bond and mortgage, which represented no original loan or investment of moneys, but which had been received as a part of the consideration expressed upon a trade of properties. The investment was, in fact, but a mere sham and form, incompletely gone through with at that, as, doubtless for some ulterior purpose, the defendant did not even record the assignment " (p. 222).

Even if it were to be considered that in December, 1934, the association had a right to elect, this record establishes that the election was made to proceed *in personam* against deceased. All facts necessary to a choice were in the possession of the association. The single thing which it did not know was that if decedent died suddenly his estate might be insolvent. It knew he existed in the flesh on the day when it refused his tender of mortgage. It knew then that his body could be physically taken into custody on a charge of crime. It knew that he was subject to the ordinary hazards of human existence and of course it knew that he might elect to destroy himself. Plainly it decided to take the chance of recovering its cash, with interest, rather than take the mortgage. It cannot now base any claim upon the existence of a purported assignment which plainly was antedated so that if accepted by the association its date might to some degree cover the true nature of the transaction of deceased with the association's money. As of the date of the purported assignment there was no advance by the association. As of the date of the advance there was no assignment. No one aware of the chronology of events (and the association had that knowledge) could have been in the slightest degree misled by the tenor of the assignment.

The claim of Teachers Building and Loan Association if allowed would operate to diminish the interests of other creditors of deceased whose claims will be paid in a much smaller percentage than will the claim of the association. On a record such as this the court should not add to the disadvantage already suffered by the general claimants. The proceeding is dismissed on the merits.

Submit, on notice, decree accordingly.