Northridge Cooperative Section No. 1, Inc., Respondent, *v.* 32nd Avenue Construction Corp. et al., Appellants, et al., Defendants.

First Department, March 22, 1960.

*Paul W. Williams* of counsel (*David Morgulas* and *Donald F. X. Finn* with him on the brief; *Cahill, Gordon, Reindel & Ohl* and *M. Carl Levine, Morgulas & Foreman,* attorneys), for appellants.

*Bernard Buchwald* of counsel (*Bernard Nadel, Maxwell H. Tretter* and *Edmund B. Hennefeld* with him on the brief; *Hoffman, Buchwald, Nadel, Cohen & Hoffman,* and *Maxwell H. Tretter,* attorneys), for respondent.

BOTEIN, P. J. On a prior appeal, *Northridge Cooperative Section No. 1* v. *32nd Ave. Constr. Corp.* (2 N Y 2d 514, affg. 286 App. Div. 422), certain paragraphs of the complaint were stricken, and leave to replead was granted as to the balance. Although the transactions complained of in the amended complaint appear to differ substantially from the allegations stricken in the earlier pleading, defendants-appellants contend that the repleaded allegations, though possibly obscured by pleading verbiage, are in fact essentially the same as those previously stricken. They moved unsuccessfully at Special Term, under rule 103 of the Rules of Civil Practice to strike specified paragraphs as sham, and for certain other relief. The issue on this appeal is limited only to the propriety of that part of Special Term's ruling which denied the motion to strike such paragraphs contained in the first cause of action. Therefore, it is only that cause of action with which we are concerned.

The first cause of action, seeking an accounting from the defendants for the breach of fiduciary obligations in the waste and diversion of corporate assets and opportunities and the profits obtained thereby, alleges in essence the following:

Plaintiff, a co-operative corporation, was organized in December, 1950 by individual defendants Winston and Muss to take over ownership of a garden apartment project to be constructed in Jackson Heights, Queens. Prior to the election by the tenant stockholders of their first board of directors and officers, Winston and Muss exercised working control over the plaintiff corporation. *Subsequent* to December 23, 1950, the time the first tenant stockholders subscribed for their stock, when the defendants owed a fiduciary obligation to the plaintiff corporation, they put into execution a plan, scheme, and conspiracy to obtain excessive prices and fees

(a) by diverting to themselves a premium in excess of $100,000 for placing a mortgage loan which was in fact a legitimate corporate opportunity for plaintiff corporation;

(b) by causing plaintiff, on or about May 2, 1951, to enter into a construction agreement with the 92nd Street Building Corp., which was wholly owned and controlled by Winston and Muss, under terms and conditions which were unconscionable and

unfair to plaintiff, and at charges substantially in excess of the true value of the work done;

(c) by causing the 92nd Street Building Corp. to carry out its construction work in an inferior and unworkmanlike manner, using defective materials, to insure greater profits for themselves; and

(d) by causing plaintiff to agree to certain changes in the plans and specifications during the course of construction to cheapen costs without any corresponding reduction in price to plaintiff.

Plaintiff prays for a discovery of all of the transactions entered into after the subscription by the first tenant stockholders for their stock and for an accounting of all profits made and moneys received in breach of the fiduciary obligations of the defendants.

Defendants' main thrust is directed at the allegations seeking damages resulting from the excessive charges under the construction contract of May 2, 1951, and this is the only issue meriting discussion.

The allegations of the earlier complaint, which were stricken without leave to replead on the prior appeal, were quite different from the ones challenged now. The original complaint referred to the excessive profits derived by the promoters from the ground lease between the plaintiff and one of defendants' creature corporations, and from a building contract dated December 8, 1950 between plaintiff and 32nd Avenue Construction Corp., another of their creatures. Both these agreements were entered into before any tenants subscribed to shares of plaintiff's stock, were expressly referred to in the tenants' subscription agreements, and were explicitly ratified by them. Accordingly, this court held that since there was no fiduciary obligation running to future tenants, the project would be a legitimate profit-making venture for the promoters until such time as the tenants subscribed for their apartments. At the time that the promoters alone held plaintiff's stock, self-dealing would be proper (*Northridge Coop. Section No. 1* v. *32nd Ave. Constr. Corp.*, 286 App. Div. 422, 427). There would, of course, be a duty of full disclosure of such prior transactions to those to whom apartments were sold (*id.*, p. 427). Since there appeared to have been full disclosure to the subscribers and they had agreed to ratify those terms, the tenants were held without standing to attack such transactions. The Court of Appeals, in affirming, emphasized that the allegations finally stricken related solely to transactions prior to the date of the first stock subscriptions by tenant owners (2 N Y 2d 514, 525, 528).

In the pleading presently before the court, complaint is not made of the original construction agreement which had been expressly ratified by the tenant owners, but, among other things, of a new and superseding construction agreement which was entered into on May 2, 1951 between plaintiff and the 92nd Street Building Corp. No claim is now predicated upon the ground lease recited in the earlier complaint. It is the contention of defendants-appellants that since their right to realize profits under the original construction contract was unassailable, they would retain that right to profits for the duration of the transaction governed by the original contract; and that in any event the new contract of May 2, 1951 is basically the same as the one between plaintiff and 32nd Avenue Construction Corp. of December 8, 1950 which was ratified by the tenant stockholders and held immune to attack on the prior appeal.

They maintain that the last-mentioned contract was amended on January 12, 1951 to comply with certain technical requirements of the Department of Housing and Buildings, that it was assigned by 32nd Avenue Construction Corp. to defendants Winston, Muss and Mika Stiftung (Corporation) on April 7, 1951, and reassigned to the 92nd Street Building Corp. on April 26, 1951, and that the subsequent, allegedly "new" construction contract was essentially the same as the amended contract with 32nd Avenue Construction Corp.

The consent and confirmation given by shareholders in their subscription agreements to other previously executed agreements which are incorporated by reference must of necessity be narrowly construed. Such consent cannot be dichotomized to preserve to the promoters the profits realizable upon those provisions in the original contract that were preserved in the later one, while at the same time imposing upon the promoters fiduciary responsibilities only as to the added provisions of the subsequent contract. As is the case with sureties, liberties may not be taken with assent previously given (*Becker* v. *Faber,* 280 N. Y. 146; *Antisdel* v. *Williamson,* 165 N. Y. 372). The promoters whose profits under the original contract were unquestionably sealed off against tenant stockholder challenge, may have exposed those profits to fiduciary accounting by entering into the new agreement. A change or variation in the agreement expressing the underlying transaction might vitiate the original consent and effect a release from binding obligations arising thereunder unless consent is obtained anew. Ratification is the expression of acquiescence in past transactions (*King* v. *MacKellar,* 109 N. Y. 215, 223; *Stevens* v. *Melcher,* 80 Hun 514; 75 C. J. S., Ratification, pp. 608–610). It presupposes

knowledge of past transactions, actual or constructive, not prescience.

Hence, when subsequent transactions were contracted for and concluded, after tenant shareholders had come into the picture, fiduciary obligation did exist. Defendants were legally entitled to retain without attack whatever profits accrued from contracts entered into when there were no other stockholders, provided such contracts were disclosed to and ratified by the shareholders. If, however, such ratified contracts never came to fruition, but were replaced by others, a different result might follow. Differences in the date of the agreement, the contract price, or the entity with which it is made might have resulted in the withholding of assent when such changes were proposed. After other shareholders have appeared on the scene, the traditional fiduciary obligations of disclosure and accountability for secret profits of which other shareholders had no notice come into play (*Northridge Coop. Section No. 1* v. *32nd Ave. Constr. Corp.*, 2 N Y 2d 514, 527, *supra*; 1 Fletcher, Cyclopedia Corporations, §§ 192, 193).

" Sham matter is that which is good in form but false in fact, and which is demonstratively false as to leave no reasonable doubt in the mind of the court as to its falsity " (*Santasiero* v. *Briggs*, 278 App. Div. 15, 21). Defendants contend in essence that the paragraphs of the complaint under review are sham because they are repetitious of the matter previously stricken from the original complaint. Whatever other theories defendants may reserve for trial, the argument that these paragraphs are sham can be sustained only upon a clear showing that the construction contract sued upon is the same as the earlier one accepted and confirmed by the subscribers; and under which this court has earlier upheld defendants' right to realize profits.

The allegations challenged cannot be held sham at this stage of the litigation. The May 2, 1951 contract provided for a moderate reduction in total price, but also required the contractor to build a substantially smaller number of apartments. The later agreement was with a different construction company, perhaps less experienced, competent and reliable than the original contractor. The considerable interval in time between the two contracts, with consequent fluctuation in cost of labor and material, may have reflected on the fairness of the contract price under subsequent market conditions.

A resolution of the factual questions involved cannot be made adequately upon a motion of this nature. The order appealed from should be affirmed, upon the law and the facts, with costs to plaintiff-respondent.

RABIN, J. (dissenting). In its first complaint plaintiff charged the defendants with having "entered into a scheme, plan and conspiracy to use and exploit for their own personal profit * * * Section 213 and the implementary regulations promulgated by the Federal Housing Administration" to the detriment of the plaintiff, a co-operative corporation. Among other things, it was charged that in furtherance of that conspiracy and in order to achieve "huge personal profits" for themselves, the defendants Winston and Muss caused the plaintiff, which they then controlled, to enter into a construction contract with the defendant 32nd Avenue Construction Corp., at a cost which was greatly in excess of the proper cost and true value thereof.

Despite the fact that the contract was entered into before December 23, 1950, the date when the first tenant stockholders subscribed for their stock, the plaintiff sought to recoup the profit resulting to the defendants from that construction contract. It was plaintiff's contention that the defendants Winston and Muss, as sponsors and promoters of the housing project, were acting on behalf of future owners and therefore stood in a fiduciary relationship to the plaintiff corporation. In the circumstances, it was asserted, defendants were not permitted to obtain profits for themselves even though those profits stemmed from a contract made during the promotional period when they were in sole control and there had not yet been any subscriptions to the stock.

On an appeal, however, in which we considered motions addressed to the original complaint this court held that apart from the duty of making a full disclosure to the subscribers for stock, the defendants "did not owe any fiduciary duty to future tenants at this stage." (286 App. Div. 422, 427.) It thus gave a negative answer to the question as to whether the plaintiff co-operative corporation had a "legal right to attack * * * the excessiveness of costs under the construction contract" (p. 425). Accordingly, this court held the complaint to be sham in that respect and dismissed those portions thereof referring to construction profits, without leave to replead. It did allow repleader in other respects.

The Court of Appeals affirmed (2 N Y 2d 514) and thus there is a firm ruling that the sponsors of the co-operative project had the right to make a profit from their promotional activities; that such profit is contemplated by the National Housing Act and that the agreement looking to a profit does not constitute a scheme, plan or conspiracy to exploit — with the attendant unsavory connotations.

It should be pointed out that the Court of Appeals stated expressly that it did not pass on the legality or propriety of any acts or transactions subsequent to December 23, 1950, the date of the first stock subscription. As to any such acts there is no question but that the defendants did act as fiduciaries. After that date it concededly would be improper for them to engage in self-dealing for their own benefit and any profits accruing to them as a result of such transactions with or on behalf of the plaintiff corporation must be accounted for by them to the corporation.

Pursuant to the leave granted to replead as to matters other than with respect to construction profits, as shown by the original complaint, the plaintiff served an amended complaint. This complaint is now under attack, the defendants asking for a dismissal, under rule 106 of the Rules of Civil Practice, of the first cause of action as against the defendant 32nd Avenue Corporation, on the ground that the complaint does not state a cause of action as against it. Defendants also ask that certain portions of the complaint be stricken as sham under rule 103 of the Rules of Civil Practice.

The plaintiff, in this amended complaint, once again charges conspiracy to exploit the corporation. In this new complaint plaintiff, without regard to what has gone before, takes a pristine approach with respect to the construction contract. It merely alleges in connection therewith, that on or about May 2, 1951, Winston and Muss caused plaintiff to enter into an agreement with defendant 92nd Street Building Corp., a corporation wholly owned by Winston and Muss and controlled by them, for the construction of the apartment project, charging that such contract was "designed solely to benefit Winston and Muss and 92nd Street at the expense of the plaintiff." It is alleged further that the construction contract was at a price "very substantially in excess of the true value of the work thereunder", to the plaintiff's damage. This pleading disregards completely the relationship of the contract pleaded in the original complaint (between 32nd Avenue Construction Corp. and the plaintiff), and the contract referred to in this complaint; it disregards the mesne assignments through which the original contract passed from the 32nd Avenue Construction Corp. to the 92nd Street Building Corp. It likewise disregards the fact that at the time the contract presently sued upon was entered into there was outstanding the contract between the 32nd Avenue Construction Corp. (assigned to 92nd St. Bldg. Corp.) and the plaintiff, the mutual obligations of each being still outstanding and enforcible. There is no allegation that the corpo-

ration was released from its obligations under the old contract before the new one was executed, nor is there any reference to the fact that those same obligations were carried over into the new contract. Apart from the alleged allegations of misconduct in its performance (issues with which we are not particularly concerned on this appeal), with respect to the new construction contract, plaintiff merely alleges its execution, profits derived thereunder and demands that those profits be given to the plaintiff on the ground that at the time of its execution the defendants were fiduciaries.

It is this portion of the complaint that the defendants seek to strike as sham, asserting that it is a devious attempt to reach the sponsors' profit heretofore denied it, by circumventing the court's prohibition against repleader with respect thereto.

There is no question but that this amended complaint states a cause of action and that it can successfully withstand an attack under rule 106 on the ground of insufficiency. Of course, in making this determination we look to the complaint alone. However, in passing on a motion to strike the complaint, or portions thereof, as sham under rule 103, we are not confined to the complaint. We take into consideration the affidavits submitted in support of and in opposition to such motion.

The defendants assert that while the original 32nd Avenue Construction Corp. contract was amended in a minor respect so as to comply with certain requirements of the Building Department (changes contemplated by that contract), it is essentially the same as the one on which this new complaint is based. They assert that the only reason for the new contract having been drawn was to put it in the form required by the Federal Housing Authority, something that was foreseen, contemplated and mandated by the old contract.

The defendants have no objection to a trial of any issue concerning acts done by them subsequent to December 23, 1950, allegedly in violation of their fiduciary duties. They urge that plaintiff is abusing the right given it to replead, by merely setting up in its new pleading a new contract entered into subsequent to December 23, 1950, without a word indicating what relationship it has to the original contract — without a word as to whether it is substantially the same contract; whether any material changes were made from the old contract and if any were made, whether they worked to the detriment of the plaintiff. They assert that it is an innocent appearing attempt by plaintiff to reach and obtain for itself that which this court and the Court of Appeals has held it is not entitled to.

Despite the assertions of the defendants, however, we may not hold the amended complaint or any portion thereof to be sham if, as a matter of law, the defendants lost their right to keep the profits contemplated by the earlier contract by reason of the new contract even though it should appear that the latter was fair, in the best interest of the corporation and allowed for no greater profit to the sponsors than did the contract which it replaced. The plaintiff puts that question squarely in issue by demanding all of the profits above the actual cost of construction, merely because the construction contract was entered into subsequent to December 23, 1950 and nothing more. To put the question in other words — must the sponsors give up their profit because they caused a new contract to be signed after December 23, 1950, and for that reason alone, regardless of its terms and despite the fact that the new contract may essentially be no different than the old one? The plaintiff says yes and the defendants say no.

I believe the defendants' position to be the correct one. Perhaps the correct answer might be pointed up if we were to assume that the new contract is in all respects the same as the old one, with the exception that the construction price is reduced to a point where the defendants gave up 50% of the profit they would have earned had the original contract been consummated. Would the plaintiff nevertheless be entitled to recover the remaining 50% even though the new contract thus worked to its benefit? Must it be held that there may not be a substitution of contracts at a saving to the corporation, except at a penalty to the sponsors, simply because such substitution was made subsequent to December 23, 1950? In these circumstances should plaintiff be inequitably enriched solely because a new contract came into existence and despite the fact that the new contract would substantially reduce its obligations under the old one? The answer would seem obvious for in such event plaintiff would have suffered no detriment. It is apparent, therefore, that unless a change to the detriment of the corporation is shown there is no basis for charging that the defendants are liable to account to plaintiff for legitimate profits resulting from their activities as sponsors and promoters of the project.

The plaintiff urges that the new contract not having been made with the original contracting corporation it must be considered anew. That position is not tenable because the 32nd Avenue Construction Corp. had a right to assign its contract and the 92nd Street Building Corp. stood in its position by way

of assignments. Also because the entire complaint is grounded upon the proposition that both of these corporations were owned and controlled by defendants Winston and Muss and that they and these corporate defendants are really one.

We must consider whether the allegations of the complaint with respect to the construction contract should be stricken as sham because the plaintiff has failed to plead out of existence the contract of December 23, 1950 — which contract was made at a time when no fiduciary relationship existed. The plaintiff not having done so, allegations seeking to set up the existence of a fiduciary relationship under the new contract, which would permit of recovery for a period prior to the time that relationship has been held not to exist, must be held sham in the light of the prior ruling of this court which was affirmed by the Court of Appeals.

The affidavits submitted on this motion indicate that there will be issues to be tried. How should these questions be raised? The defendants urge that in the light of what has gone before — the previous decision having established the sponsors' basic right to profits — it should be the plaintiff's duty first to plead facts that would support its claim to those profits. It is asserted by the defendants that the sole object of that portion of the complaint with respect to the construction contract is to reach the profits which the courts have held belong to the defendants and that it is incumbent upon the plaintiff in the circumstances, through its pleading, to show how it is entitled to them.

If this were an original complaint the indicated issues could properly be raised by affirmative defenses. However, this is an amended complaint, served pursuant to leave granted, but which leave was not unlimited. It expressly prohibited any repleader the effect of which would be to attempt to recover the profits held to belong to the sponsors and promoters. If we are not to shut our eyes to what has gone before we must readily see that that is what the plaintiff is attempting to do through this amended complaint. The least that can be expected is that the plaintiff plead facts to justify this attempt. Otherwise plaintiff will be permitted to encroach on territory which has heretofore been barred to it by this court and the Court of Appeals.

Accordingly, I would modify the order appealed from to the extent of striking the first cause of action, with leave, however, to replead in accordance herewith. In view of the foregoing, I do not find it necessary to address myself to that part of the appeal with respect to rule 106 of the Rules of Civil Practice.

M. M. FRANK and VALENTE, JJ., concur with BOTEIN, P. J.; RABIN, J., dissents in opinion in which McNALLY, J., concurs.

Order so far as appealed from affirmed, with $20 costs and disbursements to the plaintiff-respondent.