NORTHRIDGE COOPERATIVE SECTION No. 1, INC., Respondent, *v.* 32ND AVENUE CONSTRUCTION CORP. et al., Appellants, et al., Defendants.

First Department, June 28, 1955.

*Paul W. Williams* of counsel (*David Morgulas* and *Irwin Schneiderman* with him on the brief; *Cahill, Gordon, Reindel & Ohl; M. Carl Levine* and *Morgulas & Foreman,* attorneys), for appellants.

*Bernard Buchwald* of counsel (*Bernard Nadel, Maxwell H. Tretter, Edmund B. Hennefeld* and *Irving Margolies* with him on the brief; *Hoffman, Buchwald & Hoffman* and *Maxwell H. Tretter,* attorneys), for respondent.

CALLAHAN, J. This is an appeal involving the sufficiency of a complaint. The pleading may be summarized as follows:

In December, 1950, the defendants-appellants Winston and Muss promoted a project to construct a co-operative apartment house in the borough of Queens, city of New York. They caused plaintiff to be incorporated as a co-operative corporation under the laws of New York and arranged for a mortgage loan by a bank, which applied to the Federal Housing Administration for insurance of the mortgage under section 213 of the National Housing Act (U. S. Code, tit. 12, § 1715e, as amd. in 1950). The building was to be constructed on land leased to plaintiff by defendant E. & M. Greenway, Inc., for ninety-nine years at a net ground rent of $9,440 a year. It was to be erected by the defendant-appellant 32nd Avenue Construction Corp. for a sum represented by the aggregate of the amounts to be paid by tenants for their apartments, plus the mortgage loan in the sum of $3,091,200. The prices to be paid for the apartments by the tenants and the schedule of carrying charges were approved by the Federal Housing Administrator. Defendants-appellants Winston and Muss, the promoters, controlled all three of the corporations aforesaid, viz., the plaintiff-owner, the defendant-appellant 32nd Avenue Construction Corp. and defendant E. & M. Greenway, Inc., which was the landlord under the ground lease.

After the application for mortgage insurance was approved by the Federal authorities, and beginning late in December, 1950, the stock of plaintiff was placed on the market and sold to tenants, who signed subscription agreements to become effective when 90% of the apartments were sold. These subscription agreements, among other things, stated that the tenants had

exhibited to them and had read the ground lease and the construction contract.

After completion of the building and the making of payments under their subscriptions, the tenants took over control of plaintiff. It now brings this action against the promoters and numerous other defendants, who were agents of the promoters and involved in fostering the project.

The complaint contains three causes of action. The first is a complicated pleading that alleges numerous acts of misconduct by the individual defendants-appellants Winston and Muss. They are charged with dominating and controlling the other defendants, among whom are included the directors and officers of plaintiff at the time the ground lease and the building contract were entered into. The lease is attacked as calling for excessive ground rent. The defendant-appellant 32nd Avenue Construction Corp., and Winston and Muss who controlled the company, are charged with exacting an excessive price for erecting the building. Various corporate defendants are named as having been used as instrumentalities by Winston and Muss in accomplishing these ends, and various individual defendants are joined who were the directors of the said corporation.

The second cause of action is for breach of contract against defendant 92nd Street Building Corp. as assignee of the construction contract. The sufficiency of this cause of action is not presently questioned.

The third cause of action is on a performance bond given by the said defendant 92nd Street Building Corp. and defendants-appellants Winston and Muss.

The defendants-appellants moved at Special Term to dismiss the complaint for insufficiency, to strike various portions of the first cause of action as sham, etc., and for other forms of relief. Under one or more branches of the motion, affidavits were submitted showing the facts in connection with the subscriptions by tenants. All branches of these motions were denied. Some of the grounds of attack raised below are not pressed on this appeal. However, the motions to dismiss and strike portions of the complaint as sham are before us.

The first question to be considered is how far plaintiff, the co-operative corporation, has the legal right to attack the alleged excessiveness of rent under the ground lease and the excessiveness of costs under the construction contract.

In testing the sufficiency of the complaint in these regards, we must determine the legal duty owed to plaintiff company by its officers and directors before the issuance of stock to the

tenants, and what right accrued to plaintiff as distinguished from those accruing to the subscribers for its stock. For the purposes of this appeal, we will assume that the tenants became the owners of plaintiff's stock upon the respective dates when they signed their subscription agreements, though, in fact, their stock was not issued until much later. The tenants subscribed on different dates, all after the construction contract was formulated and the commitment for the mortgage made. Up to the time the project was approved as to mortgage insurance, the stock of plaintiff was owned or controlled by the individual defendants-appellants as promoters of the project or by their nominees. They also owned the property contributed.

A perusal of section 213 of the National Housing Act and the regulations issued thereunder discloses that the law, while it relates principally to the insurance of mortgages by the Federal agency, contemplates a method for the promotion of the construction of co-operative housing units by private sponsors. This is to be done by the presentation of plans to the Federal agency by way of applications by mortgagees for insurance of projected mortgage loans on housing to be built. These steps involved submission of full details of the projected housing development, including the cost of land (or lease) and building construction, and, in addition, a schedule of proposed subscription prices and carrying charges to be met by tenants. Any loan on a projected development was required to be approved by the administrator as economically sound, before a commitment for the mortgage insurance would issue.

That the element of private sponsorship on a basis of profit to the promoters was contemplated as to the co-operative as well as the privately owned housing projects seems evident from a reading of the statutes and the regulations issued thereunder. Action by the sponsor in his own behalf, and at his own expense, up to a certain point was required. This involved acquisition of land, preparation of plans and specifications, arrangements with mortgagees for loans, and submission of the project to the Federal Housing Administration for insurance on the loan. It is apparent that until the tenants of a co-operative project came into the picture, the sponsor was acting on his own behalf and at his own risk. As the co-operative corporation was to be incorporated by the sponsor, the original directors of that corporation would have to be nominated by the sponsor. We fail to see how they would be under any fiduciary obligation to the future tenants in these initial stages. The proposal would not get into the nonprofit stage until the tenants came into

control. It would be a legitimate profit-making venture for the promoter up to the point where the land was bought or leased, the building to be erected was planned and contracted for, and the mortgage commitment approved. If promoters were to make profits, and, concededly, they were entitled to do so, they would have to be made in connection with the sale or lease of the land and the arrangement of the price for construction of the buildings. Therefore, the allegations in the present complaint that the directors of plaintiff (and defendants who dominated them) in this initial period breached their fiduciary duty of undivided loyalty to plaintiff, etc., are erroneous conclusions.

The fact that a promoter was interested in the landlord company as well as in the plaintiff, when the ground lease was made, or in the building construction company, when the contract for the erection of the building was entered into, would add nothing to any cause of action based on breach of fiduciary duties. Self-dealing at this stage was proper. In fact, the promoter alone was interested, until the loan was approved and the tenants purchased their apartments. Protection of tenants against inflated costs might depend to some extent upon the administrator making a correct decision on whether a proposed mortgage was economically sound. Of course, any decision by the administrator to insure a projected mortgage loan could not be made without an estimate of the value of the land (or lease) and the cost of construction of the building. The purchase price of apartments and schedule of carrying charges were approved by the administrator. We may assume that the reasonableness of the ground rent and the building costs was given like approval. In any event, the directors of the plaintiff (and the defendants who controlled them) did not owe any fiduciary duty to future tenants at this stage. They did owe the duty of full disclosure of the terms of the deal to those to whom apartments were sold. But there can be no doubt in this case that the tenants were told of the existence of the ground lease and the building contract. Whether they actually examined the documents or considered the prices fixed would be immaterial, if they had notice.

Up to the time when the tenants subscribed for their apartments, the situation was legally the same as in the initial stages of corporate promotion work. To a point in such transactions no one is legally interested, except the organizers (*Old Dominion Copper Co.* v. *Lewisohn,* 210 U. S. 206; *Blum* v. *Whitney,* 185 N. Y. 232; *Continental Securities Co.* v. *Belmont,* 168 App. Div. 483, affd. 222 N. Y. 673; *Hutchinson* v. *Simpson,* 92 App. Div. 382).

It would not be equitable to permit plaintiff, after it came into the control of the tenants, to attempt to reduce the ground rent or show the excessive cost of the building on the theory that the directors of plaintiff at the time these costs were agreed upon owed fiduciary duties to tenants, whose rights had not come into existence, to secure lower prices (*Capitol Wine & Spirit Corp.* v. *Pokrass,* 277 App. Div. 184, affd. 302 N. Y. 734).

It is questionable whether in face of the approval of the transaction by the Federal authorities that jurisdiction would exist to grant any relief that would relieve the tenants from any part of the subscription costs (*Wasservogel* v. *Meyerowitz,* 300 N. Y. 125). At least, any terms or condition that would affect the validity of the mortgage would be incontestable.

Questions somewhat similar to those now considered were present in *Fieger* v. *Glen Oaks Vil.* (206 Misc. 137, affd. 285 App. Div. 814). Though that case involved a privately owned project erected under sections 608 *et seq.* of the National Housing Act (U. S. Code, tit. 12, §§ 1743 *et seq.*), we see no essential difference between the privately owned and the co-operative project as to the obligations of sponsors up to the time that co-operative tenants have subscribed for apartments. The holding there that the rents might not be readjusted would seem applicable here to the ground rent and construction costs.

The terms of the deal, when they were made, appear to have been fully disclosed to the present subscribers. They were bound by the subscription agreements, as were those they contracted with. The tenants were engaging in an arms-length real estate transaction, when they purchased for a specified sum apartments in a building to be erected at a specified cost on a piece of land leased at a specified rental. The government agency had sanctioned certain features of the transaction, and the sponsors in erecting the building acted upon the tenants' agreement. Such tenants may not now attack that deal on the theory that they were entitled to better terms or to place reliance upon the belief that the directors of the corporate owner had a duty to act as their fiduciaries (*New York Trust Co.* v. *American Realty Co.,* 244 N. Y. 209). Such claims are without support in law, and sham. For the purpose of ascertaining the sham nature of the claim we may not only consider the effect of the Federal statutes, but ascertain the giving of notice from the subscription agreement set forth in the affidavits. The portions of the complaint relating to the ground rent and the cost of construction will be stricken, without leave to replead.

We have a different situation as to the performance of the building contract, or as to any alleged acts of misconduct by defendants, after the tenants subscribed. The portions of the complaint based on these features of the first cause of action could not, at least, be regarded as sham.

The complaint also alleges that in connection with soliciting subscription agreements defendants made certain representations with respect to certain refunds known as "patronage refunds" that would be effected as the result of anticipated savings during the operation. Defendants attack this portion of the complaint on several grounds, including the claim that any right of action based on any such representations (assuming that they were actionable) would accrue to the stockholders, and not to the corporate plaintiff. We agree with that contention. Any refunds, if they accrued, would be payable by plaintiff to the subscribing tenants. Therefore, plaintiff would benefit from nonpayment. It may not recover from defendants not only because it had suffered no injury by the nonpayment, but because in its corporate capacity it does not own any claim. In fact, the present stockholders of plaintiff may not be the ones to whom the representation was made. This portion of the complaint must also be stricken, without leave to replead.

The first cause of action also alleges wrongful acts by the individual defendants as conspirators to make a profit in causing the defendant 92nd Street Building Corp. to render defective performance of the building contract. We do not understand the complaint to charge that these defendants tortiously induced any breach of contract. The contract was not terminated. Assuming that the individual defendants were connected with the building corporation, they would not be individually liable for a breach of contract by that corporation. As presently alleged, these charges of conspiracy add nothing to the complaint.

As to the third cause of action, we feel that the denial of the motion was proper. The claim of prematurity should await production of the undertaking on which it is based. The motion in this respect may be renewed later.

The order appealed from should be modified, with $20 costs and disbursements, and the motion granted to the extent indicated herein, with leave to replead.

COHN, J. (dissenting). Plaintiff, Northridge Cooperative Section No. 1, Inc. (hereafter called "Northridge") a co-operative corporation organized under the Co-operative Corporations Law of this State to qualify for mortgage insurance in a co-operative

housing project under section 213 of the National Housing Act (U. S. Code, tit. 12, § 1715e) seeks in this action to compel an accounting for the acts of misconduct allegedly committed against it by the sponsor-promoters of the project and various persons and corporations claimed to have been associated in conspiracy with them. The motion denied at Special Term was to dismiss the complaint for insufficiency pursuant to rule 106 of the Rules of Civil Practice, that plaintiff has not legal capacity to sue under rule 107, and for additional relief under rules 90, 102, 103. From the order entered upon its denial, this appeal is taken.

Only the first cause of action of the three stated in the complaint need concern us, as the attack on the second cause of action has been withdrawn, and it is agreed that at least at this time the denial of the motion was proper as to the third cause of action.

The first cause of action alleges essentially that Northridge was formed under the promotion and sponsorship of appellants Winston and Muss; that the latter and defendant 32nd Avenue Construction Corporation, their wholly owned subsidiary, organized plaintiff co-operative corporation, applied for and received in its name mortgage insurance under section 213 of the National Housing Act, arranged for the construction of the co-operative housing and sold the stock to the co-operative stockholders. Winston and Muss also formed other corporations, namely: defendants 92nd Street Building Corporation, E. & M. Greenway, Inc., Northridge Management Corporation, and Mika Stiftung Corporation; they were to perform certain other roles in connection with appellants' sponsorship and promotion of the project. These companies, so it is alleged, were under the complete domination and control of Winston and Muss by selection of directors and officers of their own choosing, and by the designation of dummy stockholders. It is further alleged that the project was conceived under a plan by Winston and Muss, and their various designees, and wholly owned corporations, to draw off improper and excessive charges, fees and profits through various means and devices, and that they effected waste, misappropriation and unlawful diversion to themselves of plaintiff corporation's assets to the detriment of plaintiff and its present tenant co-operative stockholders.

The prime charges made in the complaint are that Winston and Muss, using defendant E. & M. Greenway, Inc., their wholly owned corporation, caused plaintiff to enter into a ground lease with Greenway upon land at a net annual rental of $9,440 for ninety-nine years which they well knew bore no reasonable

relation to the true rental value of the land, but was calculated to insure to them for a long period of time, excessive returns upon the amount invested by them in the land acquisition; that Winston and Muss, using the defendant 32nd Avenue Corporation, their own corporation, caused plaintiff to enter into a construction contract with the 32nd Avenue Corporation at a construction cost which they well knew was grossly in excess of the proper cost or charge therefor; that Winston and Muss pursuant to their plan to reap illegal profits for themselves at the expense of plaintiff, caused their wholly owned construction company, 92nd Street Building Corporation, assignee of the construction contract of the 32nd Avenue Corporation, to render defective and inadequate performance under the building contract by using inferior materials and doing the work in an unworkmanlike manner. Annexed to the complaint as Exhibit A is a detailed specification covering seventeen pages of the record setting forth such inferior and defective materials and work. There are other allegations of misappropriation by defendants relating to accounting claims and moneys taken. One in particular deals with a sum in excess of $100,000 paid by a mortgage lending institution to defendants as a premium for the mortgage loan on the property for which plaintiff asks defendants to account.

For the purpose of this motion, the allegations set forth in plaintiff's complaint must be deemed true. Accepting this premise, the first cause of action is clearly sufficient. It shows waste, and diversion to the alleged defendant conspirators of the assets of plaintiff co-operative corporation and of its owners, the tenant co-operative stockholders.

The sponsor-promoters stand in a fiduciary relationship to plaintiff corporation and owe a fiduciary obligation to plaintiff, where, as alleged here, the sponsors and promoters of the project purportedly acting on behalf of future owners, employ their control of the operation during the period of its promotion and development to obtain illegal and excessive profits for themselves through various siphoning devices. (*Elco Shoe Manufacturers* v. *Sisk,* 260 N. Y. 100; *Manson* v. *Curtis,* 223 N. Y. 313.) Here there is imposed upon appellants the additional obligation of compliance with the intent and purpose of section 213 of the National Housing Act. Added by amendment in 1950 to title II of the National Housing Act, this section extended the coverage of mortgage insurance under the act to property held by a nonprofit co-operative ownership housing corporation, the permanent occupancy of which is to be restricted to members of

such corporation. As to the purposes contemplated by Congress, the United States Senate Report No. 1286 in connection with the enactment of section 213 relating to co-operative housing stated (U. S. Code, Cong. Service, 81st Cong., 2d Sess., 1950, pp. 2100, 2102–2103): "it is essential that every possible economy in financing, construction, and maintenance be translated directly into corresponding reductions in the monthly charges which the individual consumer must pay for that housing" and as a further object: "Before any advances could be made, the Administrator would have to determine that the borrower is a bona fide cooperative or nonprofit corporation whose methods of operation are such as will avoid the use of funds for any speculative purpose or the payments of excessive fees, salaries, or charges."

Within the framework of the Federal housing act it was never intended, so plaintiff argues, that promoters and developers were to make a profit out of the co-operative corporation (plaintiff here) and defendants themselves do not assert such a claim. While the corporate owner of the land may be entitled to a fair profit by its ownership and the corporate builder to a fair builder's profit, neither the owner of the land nor the builder is privileged to exact exorbitant profits to the ultimate benefit of Winston and Muss whose creatures all of these corporations concededly were. The absolute control of plaintiff by Winston and Muss created a fiduciary obligation for the benefit of the true co-operative stockholders in whose behalf they were acting. The question is not the right of the builder and owner of the land to a profit, but rather the employment of means by defendants Winston and Muss of causing plaintiff to pay excessive prices and creating unfair profits for themselves out of the so-called "builders profit", "profit on the land" and the numerous other devices pleaded in this complaint. Thus the tenant co-operative stockholder is ultimately required to pay an inflated price for his co-operative apartment and consequently higher monthly rental charges. There are no "tenants" as such involved here as was the case in *Fieger* v. *Glen Oaks Vil.* (206 Misc. 137) where a project was organized under section 608 of the National Housing Act (U. S. Code, tit. 12, § 1743). Plaintiff here is solely owned by the tenant co-operative stockholders and they, through plaintiff, are the ones who ultimately pay all costs.

Appellants argue that plaintiff is barred from suing because none of the present stockholders of Northridge was a stockholder at the time the challenged agreements were made and the

improper acts pleaded in the complaint occurred. They rely upon the provisions of section 61 of the General Corporation Law and the case of *Capitol Wine & Spirit Corp.* v. *Pokrass* (277 App. Div. 184, affd. 302 N. Y. 734). This objection, it would seem, might properly be interposed by way of defense as we are dealing here only with the sufficiency of the complaint. Moreover, the doctrine of the *Capitol Wine* case was never intended to apply to an action of the type here involved. This is in no sense a '' purchased grievance ''. Appellants Winston and Muss were not beneficial owners of the stock at any time. They were merely the promoters and sponsors of the project supposedly for the benefit of the true owners — the tenant co-operative stockholders. The ownership and operation of plaintiff by Winston and Muss was no more than a method of convenience to facilitate the promotion and development of the project. This differs materially from the situation in the *Capitol Wine* case where the corporation sued former beneficial owners upon an alleged grievance which occurred before those suing in the corporation name had purchased their interest. Here the former directors and officers of plaintiff never owned any beneficial interest but were at best presumed to act not for themselves but in behalf of the tenant co-operative stockholders now in control of the corporation.

Plaintiff properly contends that the acts complained of took place after 90% of its present stockholders had acquired their shares by subscription. The project could not become operative until 90% of the stockholders had subscribed and until the 90% group embraced 65% who were to be World War II veterans. Pending that eventuality all agreements and proposals were merely tentative and did not ripen into binding obligations. Thus, the indenture of lease which is basis of plaintiff's claim of excessiveness in the rental charges did not come into being until some time after 90% of the subscriptions had been obtained, whereas before any subscriptions existed it was merely an agreement to lease. The construction contract upon which plaintiff is suing, likewise did not come into being until considerably later. The objection that none of the stockholders owned stock at the time of the acts complained of, and at the time the agreements were made, would seem to be without merit.

The Special Term, therefore, properly denied the motion to dismiss for alleged legal incapacity to sue.

As a further basis for avoiding fiduciary responsibility to plaintiff, defendants urge that there was disclosure, ratification and consent by the present stockholders sufficient to relieve

defendants of liability to plaintiff. Reliance is apparently predicated on the two contentions (1) that the subscription agreement, which is in the record and set forth as an exhibit attached to the affidavit of defendant Winston, disclosed all facts and that the subscribers' signature to that agreement constituted a ratification and consent which bound plaintiff; and (2) that the Federal Housing Administration's supervision and approval of certain of the acts complained of constitute a bar to plaintiff's claim for relief. However, they involve elements more appropriately to be considered by way of defense rather than on a motion to dismiss the complaint before answer. There is likewise the factual issue which it seems should preclude its consideration on this motion. Furthermore, there appears to be an affirmative basis for denying the motion to dismiss the complaint on these grounds. It is difficult to understand how an agreement not yet in existence can be consented to and ratified. The agreement of lease and the construction contract could not ripen into effective and binding agreements until 90% of the stock had been subscribed. Yet it is the language of the subscription agreement upon which defendants rely in claiming ratification and consent.

Moreover, it cannot reasonably be assumed that the potential stockholder — a small co-operative owner or a World War II veteran, acting under the pressure of a housing shortage to obtain living accommodations — was in a position to pass upon and evaluate the complex details of this multi-million dollar building venture even if he were shown the documents referred to in the agreement. In any event, this perfunctory showing cannot meet the requirement of law regarding disclosure which must be established in order to bind a beneficiary against his fiduciary's fraud irrespective of its extent or nature. (*Craighead* v. *Peterson,* 72 N. Y. 279, 285; *Trustees of Town of Easthampton* v. *Bowman,* 136 N. Y. 521, 526.)

The contention that the Federal Housing Administrator's supervision and approval bars plaintiff's claim is likewise without merit. Such supervision and approval as there may have been was directed solely to the insurance of a mortgage on the project. This limited function may not be magnified to encompass all of plaintiff's rights irrespective of the extent to which appellants overreached plaintiff through improper employment of their position of trust. No review is here sought of an act of the Administrator of the National Housing Act, which this court jurisdictionally would be barred from reviewing, as was the case in *Wasservogel* v. *Meyerowitz* (300 N. Y. 125). The acts of the

Federal Housing Administration in insuring the mortgage are in noway challenged in this complaint. There can accordingly be no basis for appellants' contention that any action by the Federal Housing Administration may bar plaintiff's rights against the promoters and developers of this project.

While voiding of the land lease is of course impracticable, if plaintiff is entitled to relief, equity will conform its decree to the established facts and if due to the allegedly improper acts of appellants, the stockholders of plaintiff are burdened with unfair and unreasonable leases, such provisions can be rescinded, and appropriate adjustments may be made. (*Sage* v. *Culver,* 147 N. Y. 241.)

The Special Term was right in holding that " all promoters, nominees, stockholders, subscriber stockholders and qualifying stockholders, were agents for the beneficial owners, i.e., the tenant-co-operator-stockholders and the plaintiff corporation." The party qualified to bring suit and to call appellants to account in equity for their alleged waste of assets and their alleged improper diversion of profits to themselves is the directly aggrieved plaintiff corporation, wholly owned by the tenant co-operative stockholders.

The order appealed from should be affirmed.

PECK, P. J., and RABIN, J., concur with CALLAHAN, J.; COHN, J., dissents and votes to affirm, in opinion.

Order modified, with $20 costs and disbursements to the appellants, and the motion granted to the extent indicated in the opinion herein. Settle order on notice. [See *post,* p. 1078.]