Aurelio, J.
This is an action by a co-operative housing corporation, organized pursuant to the Cooperative Corporations Law of the State of New York to take advantage of the provisions of section 213 of the National Housing Act (U. S. Code, tit. 12, § 1715e), against the sponsors of that corporation’s housing project. The defendants include the corporation which owns the land on which plaintiff’s project is built and the individuals who are both stockholders of the land company and partners in the construction company which erected plaintiff’s buildings. Some of the individuals acted as officers and directors of the plaintiff from the time of its organization until its housing project was completed, at which time new officers and directors were elected by the tenant stockholders.
The motion herein seeks summary judgment dismissing the second and the fourth through the eighth causes of action, as well as certain enumerated paragraphs of the ninth cause of action.
The second cause of action alleges that in June and August of 1950, and April of 1951, defendant 18 Acres Corporation purchased certain land to be used as a site for plaintiff’s housing *1004 project and leased to plaintiff only a portion of the land. It is sought to have 18 Acres Corporation declared a trustee of the unleased portion of the land and convey it to the plaintiff or include it in the leased premises at no increase in rent.
The fourth cause of action charges that the ground rental of $7,640 per annum is excessive and unfair to the plaintiff and that the fair rental value of the site is not more than $1,600 per year. The complaint seeks a judicial determination of the fair rent and imposition of liability on 18 Acres Corporation for the excess rental previously paid by plaintiff.
The fifth cause of action attacks the fairness of the contract price under the construction contract, the claim being made that the price was excessive by over half a million dollars and that defendants, as officers and directors of the plaintiff, breached their fiduciary duty in agreeing to it. An accounting is asked.
The sixth cause of action alleges that certain modifications in the construction contract made by change orders resulted in the reduction of the value of the plaintiff’s buildings by more than $50,000 and benefited defendant Knolls Construction Company accordingly.
The seventh and eighth causes of action involve breaches of the construction contract. The seventh is a cause of action for damages against Knolls Construction Company for alleged failure to perform the contract satisfactorily, and the eighth is against the defendants Jack Ferman and Florence Ferman, on an indemnity agreement.
The portions of the ninth cause of action to which this motion is addressed, charge that defendants breached their fiduciary duty to plaintiff by accepting in its behalf allegedly defective performance by defendant Knolls Construction Company under the construction contract and paying to that defendant the full contract price, as to which an accounting is sought.
The answer, in addition to denials, pleads two affirmative defenses, which are material on this motion:
“ (a) That the plaintiff was organized to acquire a housing project to be regulated by the Federal Housing Administration (hereinafter called F. H. A.) under section 213 of the National Housing Act, and all its stockholders approved, consented to and ratified all contracts and agreements executed by the plaintiff which were approved by the F. H. A., as well as all findings of the F. H. A. and action taken by plaintiff with its approval, and consented to be bound by F. H. A. determinations; and
“(b) That the transactions complained of in the complaint *1005 were all approved by the F. H. A., in accordance with section 213 of the National Housing Act, which approval constituted an administrative determination which may not be attacked in this action.”
In Northridge Coop. Section No. 1 v. 32nd Ave. Constr. Corp. (286 App. Div. 422 [1st Dept., 1955]), the court had a similar complaint under consideration. There, the complaint was attacked and, as here, the lease was claimed to call for excessive ground rent and the construction contract to call for an excessive price. There, as here, causes of action were also alleged for breach of the construction contract and on an indemnity agreement.
The motion made in that case involved the issue as to “ how far plaintiff, the cooperative corporation, has the legal right to attack the alleged excessiveness of rent under the ground lease and the excessiveness of the cost under the construction contract.”
The court there held that the allegations of the complaint relating to the ground rent and to the cost of the construction contract were insupportable in law and sham, in view of the fact that the lease and the construction agreement each antedated the first tenant subscriptions to stock of the plaintiff. The Appellate Division turned its decision on the absence of fiduciary duty by directors of the plaintiff and those who dominated them in the period before any of the tenant stockholders subscribed, and on the full disclosure made to them through the contents of the subscription agreement, which disclosure operated to disable both the plaintiff and its stockholders from suing on the presubscription acts — that is, the lease and the construction agreement. But, as to the performance of the building contract and any alleged act of misconduct after the tenants subscribed, the court sustained the pertinent portions of the complaint.
The essence of this ruling is that the disability of the plaintiff to sue with respect to presubscription acts has a twofold basis. First, it derives from the express acts of ratification found in the subscription agreements, and, secondly, there is estoppel based on the absence of any beneficial interest in the corporation at the presubscription time by the ultimate tenant stockholders (Capitol Wine & Spirit Corp. v. Pokrass, 277 App. Div. 184 [1st Dept., 1950], affd. 302 N. Y. 734 [1951]).
Disability to sue on postsubscription acts, therefore, must be founded upon documentary proof of express acts of ratification of postsubscription acts and the absence in the postsubscription *1006 period of any beneficial interest on the part of the tenant stockholders. The causes of action herein, with one exception adverted to below, charged postsubscription breaches of the construction contract and of fiduciary obligations.
It, therefore, seems to me that on the authority cited above these claims are sufficient and must be sustained unless the documents establish that postsubscription breaches of the construction contract and violations of the fiduciary obligations are nonactionable because of ratification or estoppel.
The matter adduced by defendants to satisfy these requirements consists of various documents and references to section 213 of the National Housing Act and regulations promulgated thereunder, allegedly establishing:
“ (1) Stockholder approval, consent to and ratification of all contracts and agreements executed by plaintiff which were approved by F. H. A., and a series of commitments by the stockholders to F. H. A. regulations; and
“ (2) F. H. A. approval of the transactions complained of in the complaint, constituting an administrative determination which may not be attacked in this action.”
I shall first consider the second cause of action, wherein it is set forth that in June and August of 1950, and in April of 1951, defendant 18 Acres Corporation (the corporation owning the land) purchased certain land to be used as a site for plaintiff’s housing project, and that in February, 1952, defendants leased to plaintiff only a portion of that land. It further appears from the allegations of this cause of action that plaintiff was organized on July 10, 1951, and in June, 1951, subscriptions to the capital stock were offered to prospective tenant stockholders.
Since the defendant 18 Acres Corporation acquired the land months before the first subscriptions were offered to prospective tenant stockholders and before the plaintiff was even organized, plaintiff cannot claim a beneficial interest in the original land purchased by the defendant 18 Acres Corporation. It is clear from the Northridge decision (supra) that there was no fiduciary duty owed by 18 Acres Corporation or its individual stockholders to plaintiff at the time of the respective land acquisitions, all of which preceded the stock subscriptions in the plaintiff. Accordingly, summary judgment should be granted as to the second cause of action.
All other causes of action relate in one way or another to the lease or the construction agreement, both of which were made in February, 1952. Change orders relating to the construction agreement were made thereafter. Tenant stockholders subscribed in June and July, 1951.
*1007 Although the acts alleged in these causes of action thus all clearly postdate the first tenant subscriptions, and therefore are clearly actionable under the Northridge decision, as set forth above, defendants contend:
“ (1) That all of the plaintiff’s stockholders approved, consented to and ratified all contracts and agreements executed by the plaintiff which were approved by the F. H. A., and action taken by plaintiff with its approval; and
“ (2) That plaintiff’s charter and by-laws and the subscription agreements signed by its stockholders committed the stockholders to F. H. A. regulations.”
In the Northridge case disclosure was made in the subscription agreements of the lease and construction agreement, which the plaintiff later attacked, and the court foreclosed suit thereon only to the extent that review was sought of acts predating subscription, expressly sustaining the causes of action relating to the postsubscription acts, notwithstanding arguments of disability to sue and/or ratification with respect to such post-subscription acts. The court said (p. 429): “ We have a different situation as to the performance of the building contract, or as to any alleged .acts of misconduct by defendants, after the tenants subscribed. The portions of the complaint based on these features of the first cause of action could not, at least, be regarded as sham.”
Nothing to warrant summary judgment has been shown in the nature of approval, consent to or ratification of post-subscription breaches of the construction contract, much less of breaches of fiduciary duty.
Nor is there anything in plaintiff’s charter or by-laws or in the subscription agreements which yield the conclusion that these documents constituted binding commitments to be bound by determinations of the F. H. A. Neither awareness of the purpose to construct housing “ to be regulated ” by the Federal Housing Commission, pursuant to section 213 of the National Housing Act, nor organization of the corporation to construct, own and operate a housing project under section 213, nor subscription to the stock of a corporation to build, construct and operate a housing project which would be subject to the regulations of the Federal Housing Commission, constitutes a binding-commitment to be bound by determinations of the F. H. A. with respect to the matters in suit, as contended by the defendants.
Nothing has been adduced to show that the plaintiff or its tenant stockholders agreed that defendants could breach their trust to the plaintiff. Furthermore, the evidence is insufficient to show that the plaintiff or its tenant stockholders executed *1008 any documents which waived the right" to sue on, or estopped them from suing on, the contract to construct the building in accordance with the specifications.
Defendants next contend that all the transactions involved on this motion were approved by the F. H. A., pursuant to statutory authority granted by the National Housing Act, and that these determinations may not be reviewed in this court. To support these contentions, references are made to (1) the statute, (2) its purposes as shown by legislative history, (3) the North-ridge interpretation of the statute, (4) the administrative construction of the statute by the F. H. A. itself, as shown by its regulations, and (5) documentary matter allegedly establishing that all details of the operations challenged were fully approved by the F. H. A.
The argument falls short of demonstrating that the allegations set forth in the complaint against the defendant fiduciaries were approved by the F. H. A., or, indeed, of establishing that the F. H. A. was in fact authorized by statute to make determinations binding as between plaintiff and the building contractor for one, as between the plaintiff and its fiduciary, for another.
Naturally, the F. H. A. was concerned with the terms of the construction contract, lease, etc., from the standpoint of a mortgage insurer, but I fail to find in the material presented to me sufficient evidence that the discharge of its duties implied that its findings or conclusions would be binding as between the corporation and the builder or indemnitors with reference to the construction contract, and/or as between the corporation and the promoters thereof respecting the breaches of fiduciary duty which arose in the postsubscription period.
A decision that F. H. A. approval of the lease, the construction agreement and the change orders protects the defendants against suit would read into the statute matter which is not to be found there. The court may not add to a statute. It may not legislate by judicial construction of a statute and any changes in the wording thereof must be made by the Legislature, not by the court. Had Congress intended to make F. H. A. approval or its determinations binding upon the matters and issues in suit, it could have done so by appropriate language.
The seventh and eighth causes of action dealing with breach of the construction contract further demonstrate the weakness of defendants’ position. The argument seems to be that F. H. A. made an administrative determination ruling out liability for postcontract breaches of performance by approving various *1009 stages of payment and the final payment made to the construction company.
F. H. A.’s approval of payments was in its capacity of insurer of the mortgage and, as such, it was concerned only with its own commitments and mortgage security, and not with any controversies that might thereafter arise between the plaintiff and the construction company with respect to the alleged defective performance. The actual contract documents entered into between plaintiff and the construction company themselves negate any possible inference that the F. H. A. would have the last word on the subject of claim by the plaintiff of defective performance by the contractor. Thus, article 20 of the construction contract provides: “ Correction of Work After Final Payment. Neither the final certificate nor payment nor any provision in the Contract Documents shall relieve the contractor of responsibility for faulty materials or workmanship and, unless otherwise specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom which shall appear within a period of one year from the date of substantial completion.”
Article 40 of the construction contract provides: ‘ ‘ Arbitration. — All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of the American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction.”
The indemnity bond provides: “■ 2. No suit, action or proceeding by reason of any default whatever shall be brought on this bond after two years from the date on which the final payment under the construction contract falls due.”
All these provisions make it clear that claims by the plaintiff of nonperformance or defective performance or any other breach of the construction contract would survive any determination the F. H. A. might render in discharge of its own proper duties and functions.
Defendants’ contention that this court lacks jurisdiction to review determinations of the F. H. A. has no bearing on the issues before the court in this matter. Plaintiff is not here seeking to review F. H. A. determinations. A determination of the issues herein involved will not in any way disturb the mortgage which F. H. A. insured, nor will it affect the functions *1010 and manner of performance of the duties óf F. H. A. in the issuance of mortgages. Plaintiff does not here seek, directly or indirectly, any order, direction or instruction to the F. H. A.
Defendants’ final contention is that the construction contract itself makes conclusive the determination of the F. H. A. as to the contractor’s performance. Reliance here is had on paragraph 3, which, in substance, requires submission to final acceptance of F. H. A. of “ all items of construction in the exercise of any option, alternate or equivalent permitted by the Contract Documents. ’ ’
The language of section 3 assures unto F. H. A. protective provisions and machinery to enable it to satisfy itself as an insurer; but this language does not set up F. H. A. as a final arbiter between the plaintiff and the contractor.
Here, again, to sustain the defendants’ position requires reading into the statute words which are not there and taking away by implication plaintiff’s rights to have recourse to the courts. There is not enough to show that F. H. A. action was to be final and conclusive as between the parties to the contract. On the contrary, other provisions of the contract hereinbefore referred to, as well as the indemnity agreement, demonstrate otherwise.
The motion is granted as to the second cause of action and otherwise denied. Settle order.