PATRICK CONNOLLY, as President of Local 824, Affiliated with the International Longshoremen's Association, et al., Respondents, v. NEW YORK SHIPPING ASSOCIATION, INC., Appellant.

First Department, December 5, 1963.

*Charles M. Mattingly, Jr.,* of counsel (*Alfred A. Giardino* and *Luis M. Neco* with him on the brief; *Lorenz, Finn & Giardino,* attorneys), for appellant.

*Maxwell N. Rudaw* of counsel (*Henry A. Lowenberg,* attorney), for respondents.

RABIN, J.   Local 824 of the International Longshoremen's Association (ILA) is the certified collective bargaining agent for longshoremen.   Suing through its president and treasurer, it is the real plaintiff in this action.   The defendant is the New York Shipping Association, Inc.— the representative of the shipowners who employed the longshoremen.

Between March, 1954 and October, 1959, by reason of labor disputes, a series of work stoppages occurred on the piers. During such work stoppages the shipping lines used their clerical and supervisory personnel — who were neither members of the ILA nor registered with the Waterfront Commission — to perform duties ordinarily performed by the longshoremen.

It was the use of such personnel on those occasions that gave rise to this suit.

The gravamen of the first five causes of action is that the use of the shipping lines' personnel was in violation of the Waterfront Commission Act (L. 1953, ch. 882, as amd.) in that such personnel were not registered as required by the act; that consequently their employment to perform the duties ordinarily performed by longshoremen was illegal and resulted in damage to the plaintiff for which it seeks to recover.

The sixth and final cause of action is termed by the plaintiff a " cause of action inducing a breach of contract." It is there alleged, that " with full knowledge " of a " collective bargaining agreement then in effect " between the American Export Lines, Inc., and the plaintiff, the defendant procured the said American Export Lines, Inc., to breach and violate its agreement, all to its damage.

The defendant brings this appeal because of the denial by Special Term of its motion to strike substantial portions of the complaint as sham; its refusal to dismiss certain allegations as attempting to set forth a cause of action barred by the applicable Statute of Limitations and its failure to grant other related relief.

At the outset it should be observed that absent the Waterfront Commission Act, shipowners would have the absolute right, during work stoppages, to use their own clerical staff or other personnel to perform the duties of longshoremen. It is their common-law right. The Waterfront Commission Act does not deprive them of that right nor was it intended to do so. Its purpose was quite different. We have heretofore stated that "the purposes of the act were to eliminate depressing and degrading labor conditions, corrupt hiring practices and criminal activities on the New York waterfront and to control and regulate in the public interest the occupations of longshoremen, stevedores, pier superintendents, hiring agents and port watchmen (see art. I of said act)." (EAGER, J., in *Connolly* v. *O'Malley,* 17 A D 2d 411, 418–419.) We further stated that "[t]he act was obviously not intended to further or protect the private interests of the union or, for that matter, of employers, during a labor dispute or strike." (*Connolly* v. *O'Malley,* p. 420.)

A statutory denial of the right of the shipowners to use their own personnel during work stoppages would be in derogation of the common law. Consequently, such a denial would require that the statute clearly express an intention to do so. The Waterfront Commission Act does not, either expressly or by implication, indicate any such intent.

In enacting the Waterfront Commission Act in 1953, the Legislature did provide — as it had the right to do — that no person other than one registered "shall act as a longshoreman" and that "no person shall employ another to work as a longshoreman within the port of New York district unless at the time such other person is included in the longshoremen's register." (L. 1953, ch. 882, Part I, § 1, art. VIII, subd. 1.) However, on April 19, 1960, in order to make some provision to take care of situations where the services of registered longshoremen were not available during work stoppages it adopted paragraph (3) of subdivision (b) of section 4.1 of the regulations which reads as follows:

"Section 4.1. * * * (b) Registration as a longshoreman is not required for * * *

"(3) persons who are regularly employed to perform labor or services not covered by subdivision (a) of this section [longshoremen's work] and who are assigned by such employer to the performance of labor or services covered by said subdivision (a) only to meet special or emergency needs for the pro-

tection of the public health or safety where approval therefor has been previously obtained from the Commission."

In the light of the foregoing let us examine the complaint. The first five causes of action are based upon acts of the defendant before the promulgation of section 4.1. The heart of those causes of action consists of allegations that the defendant — with the connivance and approval of the commission — engaged in the "illegal and unlawful hiring and employment, as strikebreakers, during * * * labor disputes and work stoppages, of persons unregistered and not enrolled upon either the regular or temporary Register" of the commission.

The sufficiency of those causes of action must stand or fall depending on whether the employment of unregistered personnel during the periods complained of and in the circumstances set forth in the complaint was legal or illegal. We need not go far to obtain the answer to that question. We considered this aspect of the case when that question was presented to us in connection with a prior appeal. We then held that the Waterfront Commission Act placed no restrictions upon the employers' rights to employ unregistered personnel in "an emergency situation * * * where the services of duly registered longshoremen are not available" (p. 417). We said that the registration provisions of the act "were not intended to and are inapplicable to meet special or emergency conditions occurring on a day-by-day or ship-by-ship basis and arising not from the inadequacy of the size of the longshoremen's work force but from the total unavailability of such force to cope with such conditions." (*Connolly* v. *O'Malley, supra*, p. 418.)

Our determination was therefore clear that the use by the shipping companies of unregistered personnel to perform longshoremen's work during the work stoppage was not an "illegal and unlawful hiring" as alleged in the complaint.

Inasmuch as these first five causes of action must perforce rest on such "illegality" they are insufficient and may not stand.

In allowing a repleader of the original complaint, which purported to state a cause of action against the Waterfront Commission as well as the shipping association (*Connolly* v. *O'Malley*, 18 A D 2d 620), we said: "If, however, these particular defendants have in fact committed any *wrongful* acts in breach of collective labor agreements or other agreements with the plaintiffs or pursuant to an *unlawful* conspiracy originated and carried out in violation of the bargaining rights of the plaintiffs, and such acts have resulted in damage to the association itself or in a common injury to the members thereof

as such, then, of course, the plaintiffs should have the right to replead." (Emphasis added.) There is nothing presently pleaded in these five causes of action to indicate that defendant has "committed any wrongful acts", or through an "unlawful conspiracy" violated any of the "bargaining rights of the plaintiff". Consequently, the pleading of those causes is not embraced in our permission to replead. They should, therefore, be stricken on that ground apart from the reason that they are insufficient in law.

The grievance in the first five causes of action rests solely on the premise that the employment of the unregistered personnel was "illegal". In the light of our previous clear holding to the contrary, we must consider such pleading as sham.

We now consider the sixth cause of action which concerns acts occurring subsequent to the promulgation of section 4.1. As we have noted, the plaintiff terms that cause one for "inducing breach of contract". Indeed, the last paragraph of the complaint is as follows: "44. That by reason of the aforesaid acts of the defendant, NEW YORK SHIPPING ASSOCIATION, INC., in inducing a breach of the aforesaid collective bargaining agreement, the plaintiff Local Union sustained damages in the sum of One Hundred Thousand ($100,000.00) Dollars."

The contract involved in the "inducement to breach" claim was the collective bargaining agreement between "Local 824 * * * and the said American Export Lines, Inc., as one of the employer-members of the New York Shipping Association, Inc."

It is alleged that that agreement gave to the individual members of the plaintiff the sole right to load and unload baggage from ships belonging to the American Export Lines, and also that the agreement gave the members "the right * * * not to cross a bona fide picket line". It is also alleged that the American Export Lines breached the collective bargaining agreement when, during a work stoppage in November, 1960, it hired unregistered and nonunion personnel to perform longshoremen's work. It seems that the work stoppage was caused by the refusal of plaintiff's members to cross picket lines and, consequently, there was no available registered help to load or unload passengers' baggage. An emergency having been declared by the Waterfront Commission, it permitted the American Export Lines to hire unregistered personnel to perform the longshoreman work.

We fail to see how such conduct constituted a breach of the collective bargaining agreement. Be that as it may, however, how does the plaintiff attempt to fix liability on the defendant for inducing such breach, if there were one? It alleges, in

substance, that the defendant and the commission conspired to promulgate section 4.1 and to make the determination that "the mere existence of a labor dispute and work stoppage constituted an emergency." It is then charged that "in pursuance of the aforesaid conspiracy" and "with full knowledge of the aforesaid collective bargaining agreement then in effect" the defendant "procured the said Waterfront Commission unlawfully, and wrongfully to declare that an emergency existed" with the resultant hiring of unregistered personnel.

It is upon these acts that the plaintiff depends to support its charge of inducement and it is these acts which the plaintiff asserts did "defeat the rights of the plaintiffs and impair, impede and prejudice their bargaining position".

Of course, calling an act wrongful and unlawful does not make it so. And although we are obliged to construe the complaint liberally in favor of the plaintiff, we are not bound by the plaintiff's conclusory characterizations of the acts of the Waterfront Commission when a reading of the entire complaint shows them to have been done in a valid exercise of its powers. Moreover, we are not obliged, on a motion to strike as sham, to confine ourselves to the four corners of the complaint as we would be obliged to do in order to determine its sufficiency or lack of sufficiency. We may go beyond the complaint and consider all of the surrounding circumstances. (*Northbridge Co-op. Section No. 1* v. *32nd Ave. Constr. Corp.*, 286 App. Div. 422, 428; *Purdy* v. *McGarity*, 262 App. Div. 623.)

The pleading would be understandable, and even excusable, had we not already sustained the validity of section 4.1 and had we not indicated clearly that the total unavailability of the longshoremen's work force would constitute an emergency permitting the invocation of the provisions of that regulation. In the light of such determination, the allegations as to the conspiracy — to promulgate the regulation and to declare an emergency — must be considered as sham and they cannot stand in support of the claim of inducement. A conspiracy to do a lawful act does not give rise to a cause of action unless the act done was for the sole purpose of injuring a party. That is not here alleged. Nor does a cause of action arise here simply because the action of the Waterfront Commission — taken within its powers and perhaps in accordance with its duty — may have had an incidental adverse effect on the effectiveness of the work stoppage.

It should be noted that the sixth cause of action does not allege that the regulation made the use of nonregistered personnel "illegal and unlawful". To the contrary, implicit in

that cause is the charge that the regulation was conspiratorily promulgated and interpreted so as to make the shipowners' use of such personnel legal. However, even were it charged that the act as amplified by the regulation forbade what was allegedly done, no cause of action for monetary damages would lie in plaintiff's favor. "The act was obviously not intended to further or protect the private interests of the union or, for that matter, of employers, during a labor dispute or strike." (*Connolly* v. *O'Malley*, 17 A D 2d 411, 420, *supra.*)

Moreover, it should be noted that in granting the motion of the Waterfront Commission for summary judgment in this very action on the prior appeal we held that there is "no factual support whatever in the record for plaintiffs' allegations that acts of the commission were intended and carried out by defendants for the purpose of unlawfully intervening in labor disputes or strikes or that they constitute strike breaking, nor for the allegation that said regulation was designed and used as a strike-breaking device." In the light of that finding — binding upon it — the plaintiff cannot now properly allege unlawful or improper acts of the commission as one of the bases in support of its allegation of inducement.

We must conclude, therefore, that, as in the case of the first five causes of action, there is nothing pleaded in the sixth cause of action to bring it within the scope of the permission to replead for there is nothing to show that the defendant "committed any wrongful acts" or that "an unlawful conspiracy" violated any of the bargaining rights of the plaintiff.

It follows, therefore, that the complaint must be dismissed because (1) it does not come within the scope of the permission granted to replead; (2) it is insufficient in law, and (3) in the light of our previous holdings in this case it must be considered as sham.

In the light of this determination we do not pass upon the questions raised by that portion of the defendant's motion as seeks to strike portions of the complaint by reason of the bar of the Statute of Limitations. Nor need we pass upon the request for other relief.

Accordingly, the order denying defendant's motion to strike portions of the complaint as sham should be reversed on the law and in the exercise of discretion, and the motion granted and the complaint dismissed, with costs. Settle order.

BOTEIN, P. J., McNALLY, STEVENS and STEUER, JJ., concur.

Order, entered on February 7, 1963, denying defendant's motion to strike portions of the complaint as sham, unanimously

reversed on the law and in the exercise of discretion, with $20 costs and disbursements to appellant, and the motion granted, with $10 costs, and the complaint dismissed, with costs. Settle order on notice.